STATE EX REL. SULLIVAN, Appellant, vs. DAMMANN, Secretary of State, Respondent.

*January 13—February 15, 1938.*

*John J. Sullivan* of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

NELSON, J.   This is the fifth time that this court has had before it an action or appeal involving the claim of the plaintiff for the same services which she asserts were rendered to the state of Wisconsin and for which she has not been paid. *Sullivan v. Board of Regents of Normal Schools,* 209 Wis. 242, 244 N. W. 563; *Sullivan v. State,* 213 Wis. 185, 251 N. W. 251; *Sullivan v. Baker,* 217 Wis. 306, 258 N. W. 617; *State ex rel. Sullivan v. Dammann,* 221 Wis. 551, 267 N. W. 433.   The three cases first cited evidence the plaintiff's unsuccessful attempts to recover in actions brought against the board of normal regents, the state of Wisconsin, and Mr. Baker, president of Milwaukee State Teachers' College.

From the plaintiff's petition and the defendant's return thereto, to which is attached the plaintiff's claim against the state of Wisconsin, it appears that at all of the times mentioned herein the plaintiff was a teacher by profession; that on or about the 5th day of September, 1926, Frank E.

Baker, as president of the Milwaukee Normal School, offered her a position in his said school as instructor in household arts, at a salary of $2,000 a year; that the plaintiff accepted that offer and commenced to perform her duties as such instructor; that on or about October 13, 1926, President Baker informed her that the cafeteria, maintained and operated at the Milwaukee Normal School, was over $6,000 in debt, and requested her to manage the same in order to get it out of debt; that the plaintiff consented to manage the cafeteria, and assumed the duties of such management in addition to the duties of her teaching position; that the former manager of said cafeteria had received a salary of approximately $1,800 a year; that President Baker promised her that she would be paid for managing the cafeteria when funds were available; that by December 1, 1931, under the plaintiff's management, the cafeteria indebtedness had been paid, new equipment had been purchased, the kitchen and dining rooms had been painted, and a surplus of cafeteria funds amounting to $250 had been created; that shortly thereafter she asked President Baker to be relieved of the management of the cafeteria, and she was thereafter informed by him that her services as manager of the cafeteria and instructor in household arts were no longer required; that thereafter she was informed that she might continue as a part-time instructor; that at a hearing held before the board of normal regents on February 10, 1932, the board unanimously found her to be a full-time instructor; that she received her full teaching salary during the school year, September, 1926, to September, 1927; that in October, 1927, President Baker asked her if she would accept her teaching salary from two different funds; that claimant replied that it was immaterial to her from what fund her money came so long as she was paid; that from that day up to February 1, 1932, she received two separate checks each month; that the records of the board of regents show that during the school

year, 1927 to 1928, she received $1,000 for teaching, which sum was increased to $1,100 in September, 1928; that she received $1,000 each year from September, 1927, up to February 1, 1932, for managing the cafeteria; that the records of the civil service commission show that she received $1,000 each year during that time for managing the cafeteria; that during said years she did not receive the sum of $4,583.31 which was due and payable to her for purely teaching services pursuant to her contract; that for the year 1926 to 1927 she was paid nothing for services rendered by her as manager of the cafeteria; that the total amount of her claim, exclusive of interest, filed with the state of Wisconsin, was $5,583.31; that the following is a summary of her claim as filed with the secretary of state, pursuant to sec. 14.38, Stats.:

| | | | | Rec'd | Due |
|---|---|---|---|---|---|
| 1926–27 | Salary rate $2000.00 | yr. | | $2000.00 | |
| 1927–28 | " " $2000.00 | " | | $1000.00 | $1000.00 |
| 1928–29 | " " $2000.00 | " | | $1000.00 | $1000.00 |
| 1929–30 | " " $2100.00 | " | | $1100.00 | $1000.00 |
| 1930–31 | " " $2100.00 | " | | $1100.00 | $1000.00 |
| July 1st, 1931 to February 1st, 1932 (7 mos.) salary rate.............$2100.00 | | " | | · $ 641.62 | $ 583.31 |
| 1926–27 Reasonable value of services as cafeteria manager | | | | | $1000.00 |
| Total due, exclusive of interest | | | | | $5583.31; |

that the secretary of state, on January 25, 1933, transmitted said claim to the legislature; that said claim was, on January 27, 1933, received by the senate branch of the legislature; that a bill based on said claim was introduced in the senate on January 27, 1933; that the senate and assembly passed the bill, and thereafter delivered the same to the governor for his approval; that the governor vetoed the same, but because he did not return the bill to the house in which it originated

within six days, the legislature not having adjourned, it was held that the bill had become a law. *State ex rel. Sullivan v. Dammann, supra.* Ch. 497, Laws of 1933, just referred to, appropriated the sum of $6,633.31 to the plaintiff "from the general fund out of the appropriation for teachers' salaries of the Milwaukee State Teachers' College," made in par. (a) of sub. (2) of sec. 20.38. For some time prior to the time of the decision in *State ex rel. Sullivan v. Dammann, supra,* the plaintiff apparently assumed that the veto of the act by the governor was an effective veto. So treating it, she brought an original action in this court to recover the amount of her claim. *Sullivan v. State, supra.* In that case the plaintiff moved for a summary judgment upon the pleadings and an affidavit. Pursuant to such motion the record was searched and it was held that the complaint, as drawn, did not state a cause of action. Thereafter the plaintiff brought an action against President Baker to recover the amount asserted to be due her, but this court held that in contracting with her President Baker was acting not in his individual capacity but as president of the Milwaukee Normal School.

The trial court held that sec. 6, ch. 181, Laws of 1937, is unconstitutional because, in its view, the act granted extra compensation to the plaintiff for services rendered for which she had been paid. The trial court's conclusion was based upon a statement made by this court in *Sullivan v. State, supra,* in considering whether the plaintiff's complaint filed in this court in that original action stated a cause of action. The statement is as follows (p. 193) :

"If this is treated as a contract to recover the unpaid balance of plaintiff's teaching salary, we think there is no allegation of breach. It is alleged in paragraph seven of the complaint that Baker proposed to pay, and plaintiff consented to receive, her teaching pay from two separate funds, and that

she thereafter did receive these checks which aggregated her total teaching salary. In paragraph twenty-one of the complaint she alleges that the total sum received by plaintiff was the sum of $2,000 the first year, and $2,100 each year thereafter until her position was discontinued, and that this sum was the amount of her teaching contract alone. The only answer to this seems to be that in spite of plaintiff's agreement to receive her teaching pay from two separate funds, and the understanding that these two checks were in payment of her teaching salary, since the records disclose that about half of this fund was as a matter of fact paid out of the cafeteria funds, and as a matter of bookkeeping ascribed to her services as cafeteria manager, there is still a balance due her for teaching services. We fail to see any justification for such a conclusion. If the amount of plaintiff's agreed salary was paid to her, no matter from what source, in the discharge of her services as teacher, and this arrangement was agreeable to plaintiff and was acquiesced in by her, we discover no ground upon which plaintiff can claim that she has not been paid merely because of the source of the funds or the manner of bookkeeping adopted by her employer. Hence it is our conclusion that the first paragraph of the complaint states no cause of action."

At the time that action was before this court it was alleged that the plaintiff's claim had been duly submitted to the legislature; that both the senate and assembly had passed the bill, but that the governor had vetoed it, which amounted to a disallowance of the claim. Everyone connected with the case, as well as this court, assumed at that time that the governor's veto was effective and that the claim had been disallowed, otherwise there would have been no justification for bringing an original action in this court pursuant to the provisions of sec. 285.01, Stats. In the subsequent action of *State ex rel. Sullivan v. Dammann, supra,* it was held that temporary adjournment of the senate and assembly during a session of the legislature did not prevent the return of the bill by the

governor "within six days" as provided by sec. 10, art. V, of the constitution, and consequently the failure of the governor so to return it, resulted in its becoming a law.

In support of the conclusion reached by the trial court, the defendant contends that the decision in *Sullivan v. State, supra,* amounted to an adjudication that the plaintiff had been fully paid for her teaching services and that the legislature was without power at the time it enacted sec. 6, ch. 181, Laws of 1937, to allow her claim and nullify a judgment of this court. It now appears, however, that before this court rendered its judgment the legislature, in enacting ch. 497, had allowed the plaintiff's claim and quite a different cause of action is now asserted,— a cause of action based on the allowance of the claim by the legislature. Ch. 497, Laws of 1933, obviously allowed the plaintiff's claim and made an appropriation therefor "from the general fund out of the appropriation for teachers' salaries of the Milwaukee State Teachers' College made in paragraph (a) of subsection (2) of section 20.38." When *State ex rel. Sullivan v. Dammann, supra,* was decided, that particular appropriation no doubt had been wholly exhausted. Sec. 6, ch. 181, Laws of 1937, must be considered as a mere amendment of ch. 497, Laws of 1933, and enacted for the purpose of making the appropriation intended by ch. 497 effective.

The sole question therefore is whether ch. 497, Laws of 1933, as amended by sec. 6, ch. 181, Laws of 1937, is unconstitutional because it grants extra compensation "after the services shall have been rendered." The act on its face has no mark of unconstitutionality. It purports to appropriate moneys to compensate the plaintiff for services performed as a teacher. It does not purport to grant extra compensation for services rendered. It amounts to an allowance of the plaintiff's claim as filed against the state and nothing else.

That claim was for services performed as a teacher and for managing the cafeteria and clearly permitted the legislature to find the fact that she had performed valuable services for the state for which she had not been paid. The claim filed against the state showed that during the years 1927 to 1931 she had been paid $4,841.62 on her teacher contract and had been paid $4,000 out of the cafeteria account, and that she had been paid nothing for her services as cafeteria manager during the year 1926 to 1927. In this connection we may take notice of sec. 20.38 (12) (d), (e), Stats. 1925:

"(d) All moneys collected or received by each and every person for or on account of the music department, stationery stand, and *cafeteria* at the normal school at Milwaukee, shall be paid within one week of receipt into the normal school fund income, and *are appropriated to be used as revolving appropriations, respectively, for the operation and maintenance* of and the purchase of necessary equipment for said music department, stationery stand, and *cafeteria.*

"(e) The board of normal regents may establish and operate cafeterias and stationery stands at any of the normal schools; and all moneys collected or received by each and every person, for or on account of any such *cafeteria,* or stationery stand, shall be paid, within one week of receipt, into the normal school fund income, and are appropriated, to be used as revolving appropriations, respectively, for the operation and maintenance of and the purchase of necessary equipment for each such cafeteria or stationery stand."

Those statutes continued in force and effect up to July 1, 1931, when sec. 82, ch. 67, Laws of 1931, became effective. Thereafter the relevant statute read as follows:

"Sec. 20.38 (12) (a) As revolving appropriations all money received for or on account of any dormitory, dining hall, cafeteria, stationery stand, model farm or the Milwaukee normal school music department to be used for the operation, maintenance and purchase of necessary equipment for each such activity.

· "(b) The board of normal regents may establish at any or all state teachers' colleges a contingent fund not to exceed five hundred dollars out of the balances in cafeteria and dining hall revolving funds to be used for the payment of cash in advance and which are incident to the operation of such cafeterias and dining halls."

It is therefore clear that the $4,000 which she was paid as cafeteria manager came from the revolving appropriation of the normal school at Milwaukee and from cafeteria receipts.

Can this court say under the circumstances that the legislature granted extra compensation to the plaintiff after the services had been rendered, in contravention of our constitution? We think not.

In *State v. Langlade County Creamery Co.* 193 Wis. 113, 116, 213 N. W. 664, it was said:

"The rule is familiar that this court must presume that the legislature did not intend to pass any act that would be in conflict with any constitutional limitation upon the power of that body, and that it is the duty of the court to give the acts of the legislature a construction that will bring them into harmony with the provisions of the constitution and not into conflict with the fundamental law."

The legislature had before it the verified claim of the plaintiff for services performed for which she asserted she had not been paid. A hearing on the claim was had. The legislature considered the facts upon which the plaintiff's claim was based. In allowing the plaintiff's claim the legislature obviously found the facts to be as asserted by the plaintiff in her claim. In 11 Am. Jur. p. 820, § 142, it is said:

"On frequent occasions the constitutionality of a statute depends on the existence or nonexistence of certain facts. In view of the presumption in favor of the validity of statutes, it must be supposed that the legislature had before it when the statute was passed any evidence that was required to enable it to act; and if any special finding of fact was needed

in order to warrant the passage of the particular act, the passage of the act itself is treated as the equivalent of such finding. . . .

"As a general rule it may be stated that the determination of facts required for the proper enactment of statutes is for the legislature alone, that the presumption as to the correctness of its findings is usually regarded as conclusive unless an abuse of discretion can be shown, and that the courts do not generally have jurisdiction or power to reopen the question or make new findings of fact."

In our opinion this controversy is ruled by those principles.

The fact that the legislative act uses the language, "to compensate her for services performed *as teacher*" does not, in our opinion, permit us to say that the language employed is not broad enough to include services performed both as teacher and as cafeteria manager at the Milwaukee State Teachers' College. To say that she has been paid in full as a teacher, but that she has a claim against the state for services rendered as cafeteria manager which the legislature has not allowed, is an unwarranted quibble on words. Considering that a claim was filed with the legislature and fully allowed by it, together with interest thereon, the intent of the legislature is clear, *i. e.*, to compensate the plaintiff for valuable services performed by her for the state for which she has not been paid.

*By the Court.*—Order reversed, with directions to issue a peremptory writ of *mandamus* as prayed in the petition.