STATE, Respondent, v. MAHANEY, Appellant.

*No. State 19. Argued June 7, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 373.)

444

For the appellant there was a brief and oral argument by *Robert J. Lerner* of Milwaukee.

For the respondent there was a brief by *Robert W. Warren,* attorney general; the cause was argued by *Thomas J. Balistreri,* assistant attorney general.

BEILFUSS, J.  The defendant has raised three issues on appeal, namely, that the complaint for the arrest warrant does not state probable cause; that evidence is not sufficient to support a finding of guilt; and that the statute is unconstitutional because it is vague and overbroad.

Our opinion will decide only the constitutional issue because, in the view of the majority of the court, it is controlling.

The statute in question is sec. 946.80, Stats. It provides:

"**Misconduct on public grounds.** (1) No person shall commit any act in a public building or on public grounds which interferes with the peaceful conduct of activities normally carried on in such building or on such grounds.

"(2) Any person violating sub. (1) who refuses to leave such building or grounds upon request by the proper official or any person aiding, counseling or abetting another to violate sub. (1) may be fined not

more than $500 or imprisoned not more than 6 months or both.

"(3) In this section 'public building' means any building that is a part of the university of Wisconsin system or state universities system and used for any university purpose and any building owned by the state or any county, city, school district or other political subdivision of the state and used for any public purpose.

"(4) Nothing in this section shall be construed to prohibit peaceful picketing or distribution of handbills."

The facts giving rise to the prosecution are as follows:

During regular working hours on the morning of January 22, 1970, the defendant, Father Francis Edward Mahaney, as a spokesman, together with about 20 members of the Milwaukee Welfare Rights Organization, met with Arthur Silverman, the director of the Milwaukee county welfare department, for a prearranged meeting in his third-floor office at the county welfare building on West Vliet Street in Milwaukee.

The meeting broke up at about the noon hour. The defendant and the members of the group left the room and were escorted by Lieutenant Klamm of the Milwaukee county sheriff's department and other deputy sheriffs. The group, including the officers, got to the first floor of the building from the third floor by means of an escalator. There was some noise and loud talking by the defendant and some members of the group which attracted office workers who came out of their offices to see and hear the activity. There was testimony to the effect that some office workers were disrupted in their work because of the noise.

When the members of the group reached the ground floor they faced and were closer to the 13th Street exit than they were to the 12th Street exit. Lieutenant Klamm testified, over objection, that there was a disturbance at the 13th Street exit and that by prearrange-

ment the defendant and the entire group had agreed to leave the building by the 12th Street exit.

While the testimony is in dispute as to just what was done and said, the facts permit a finding that the defendant and the group were proceeding toward the 13th Street exit and Lieutenant Klamm told them they would have to leave by the 12th Street exit. Words passed between the defendant and Lieutenant Klamm and the defendant reputedly told the officer he was "not their shepherd [for the group]." There is marked dispute as to whether the defendant was persisting in leaving by the 13th Street exit and whether he struck at the officer. In any event, he was physically seized by the officers and forcibly taken from the building by the 12th Street exit and arrested.

The defendant has attacked the constitutionality of sec. 946.80, Stats., based upon his allegation that the statute is both vague and overbroad in violation of the fourteenth and the first amendments of the United States Constitution.

In this challenge to sec. 946.80, Stats., the first amendment rights of freedom of speech, freedom of assembly, and right to petition for grievance are considered by virtue of the fourteenth amendment prohibition against state abridgment of privileges or immunities; and the lack of fair notice because of the due process clause of the fourteenth amendment.

The distinction between vagueness and overbreadth set forth in *Landry v. Daley* (D. C. Ill. 1968), 280 Fed. Supp. 938, 951, has been adopted by this court in *State v. Zwicker* (1969), 41 Wis. 2d 497, 507, 164 N. W. 2d 512. It is as follows:

" 'The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for

adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional.

" 'The concept of overbreadth, on the other hand, rests on the principles of substantive due process which forbid the prohibition of certain individual freedoms. The primary issue is not reasonable notice or adequate standards, although these issues may be involved. Rather the issue is whether the language of the statute, given its normal meaning, is so broad that its sanctions may apply to conduct protected by the Constitution. . . .' "

However, where first amendment rights are involved and the challenge is both as to vagueness and overbreadth, the United States Supreme Court in *NAACP v. Button* (1963), 371 U. S. 415, 432, 433, 83 Sup. Ct. 328, 9 L. Ed. 2d 405, has stated:

"The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. Cf. *Marcus v. Search Warrant,* 367 U. S. 717, 733. These freedoms are delicate and vulnerable as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. Cf. *Smith v. California, supra,* at 151–154; *Speiser v. Randall,* 357 U. S. 513, 526. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. *Cantwell v. Connecticut,* 310 U. S. 296, 311."

We are also mindful of the rules of construction that legislative acts are presumed to be constitutionally

acceptable and if doubt exists it should be resolved in favor of the constitutionality of the statute.[1]

We now turn to an examination of the challenged statute, sec. 946.80. The title of the section is, "Misconduct on public grounds." While the title is not part of the statute and cannot prevail over the language of the statute, it can be indicative of legislative intent. Apparently the legislature intended to prohibit and make criminal, offensive conduct that disrupted the normal activities carried on in public buildings and grounds. We have no doubt that the legislature has the power to enact such prohibitions but, because first amendment rights are involved, great care and specificity must be used to insure first amendment rights are not violated or threatened.

The first section of sec. 946.80, Stats.,[2] states:

"No person shall commit any act in a public building . . . which interferes with the peaceful conduct of activities normally carried on in such building . . . ."

The words "any act" are not descriptive nor are they sufficiently definite to give reasonable notice of the kind of activity the statute seeks to prohibit. While the remaining words of the section do give some limitation to the kind of acts, namely acts "which interfere with the peaceful conduct of activities normally carried on," the ordinary person still does not have reasonable notice of what kind of act is prohibited. Certainly there are some acts which might "interfere" with the "peaceful conduct of activities normally carried on" that are not and cannot be made criminal acts.

The first section alone does not call for sanctions because of its violation; there must be a refusal to leave the building or grounds upon request by the proper

---

[1] *State v. Starks* (1971), 51 Wis. 2d 256, 186 N. W. 2d 245.

[2] The entire section is quoted above.

official. "Proper official" does not designate or describe any person or group, or group of persons with sufficient definiteness so that the average person could reasonably know who was a proper official. Is it a maintenance man, a department head, his assistant or clerk, or a policeman in uniform or out of uniform? Under the facts of this case, because of the prearrangements and the association of the occasion, the defendant could be required to recognize Lieutenant Klamm as a "proper official." We cannot, however, upon a constitutional challenge of vagueness and overbreadth of a statute, limit ourselves to an application of the facts at hand but must view them as they would apply to a multitude of ordinary situations.[3]

We conclude that sec. 946.80, Stats., does not give reasonable notice to reasonable persons of the acts it seeks to prohibit and make criminal and it is therefore constitutionally vague and in violation of the fourteenth amendment.

We further believe that the statute is overbroad in that it sweeps so broadly that it invades the area of protected freedoms—namely speech, and conceivably assembly and redress as set forth in the first amendment.[4]

This statute "sweeps" so broadly that any act which has the effect of altering the activities in a public building or public ground could be said to be interfering with the normal activities. Innumerable constitutionally protected acts of free speech (and assembly and redress) could interfere with normal activities. No constitutionally guaranteed rights are more jealously guarded than those specified in the first amendment. It should be apparent that these rights should be specially guarded in a public building or public ground.

---

[3] *NAACP v. Button, supra.*

[4] *NAACP v. Alabama* (1964), 377 U. S. 288, 84 Sup. Ct. 1302, 12 L. Ed. 2d 325; *State v. Starks, supra.*

By holding as we do that the statute is both vague and overbroad, we emphatically wish to point out that speech in all its forms and under all conditions is not protected. The state may adopt a statute embodying safeguards necessary and appropriate to assure the orderly functioning of activities in public buildings and grounds but because of the first amendment rights it must be specifically and narrowly drawn.[5]

*By the Court.*—Judgment and order reversed.

---

[5] *See Cox v. Louisiana* (1965), 379 U. S. 559, 85 Sup. Ct. 476, 13 L. Ed. 2d 487, rehearing denied, 380 U. S. 926, 85 Sup. Ct. 879, 13 L. Ed. 2d 814.