Paul L. WIPPERFURTH, Plaintiff-Respondent-Petitioner,

v.

U-HAUL COMPANY OF WESTERN WISCONSIN, INC.,
Defendant-Appellant.

Supreme Court

*No. 80–144. Argued March 2, 1981.—Decided April 29, 1981.*

(Also reported in 304 N.W.2d 767.)

For the petitioner there were briefs by *James S. Grodin* and *Grodin & Grodin* of Milwaukee and oral argument by *James S. Grodin*.

For the defendant-appellant there was a brief by *Andrew O. Riteris, Ellen E. Sward* and *Michael, Best & Friedrich* of Madison, and oral argument by *Mr. Riteris*.

STEINMETZ, J. The trial judge, the Honorable P. Charles Jones, entered summary judgment declaring ch. 135, Stats., the Wisconsin Fair Dealership Law, was retroactive and constitutional. The trial court also granted the petitioner's request for a temporary restraining order placing over the petitioner (Paul L. Wipperfurth) the mantle of protection of the requirements of ch. 135 pending the outcome of the action.

The court of appeals reversed the trial court finding the provisions of ch. 135, Stats., prospective only and therefore not applicable to the contract between petitioner (Wipperfurth) and defendant-appellant, U-Haul

Company of Western Wisconsin, Inc. (U-Haul). That court took no action regarding the trial court's restraining order. The court of appeals found a serious question concerning the constitutionality of ch. 135 would arise if it were given retroactive application. That court stated its conclusion was supported by the ambiguity of the language of the act and the legislative history which did not make explicit a requirement that the act apply retroactively.

The parties entered into a written contract on September 17, 1969. That contract was for an indefinite duration. It permitted either party to terminate the contract on 30 days written notice to the other. U-Haul complied with the terms of the contract in terminating the Wipperfurth dealership.

Wipperfurth states ch. 135, Stats., has granted him protections not in the original contract, that the law is retroactive and that it is a reasonable exercise of the state's police power.

U-Haul argues the practical result of this law is that a dealership agreement is a life-long or even perpetual contract unless the grantor can terminate it for "good cause" as defined in the statute and on 90 days notice to the dealer. If the dealer's deficiencies are corrected within 60 days of the grantor's giving the notice, the termination cannot become effective. It is claimed the notice and correction of deficiencies relationship could continue *ad infinitum*, with the dealer constantly on the margin of acceptable business practice. To apply this policy prospectively differs greatly from applying it retroactively to a contract which never contemplated such relationship.

U-Haul states its business practices and mode of operation have changed dramatically since the contract was entered into in 1969.

Under its standard dealership contract, as in issue here, U-Haul places its equipment (trailers, trucks, dol-

lies and other equipment associated with domestic moving) with a filling station operator who agrees to store, rent and maintain the equipment. The filling station operator pays no fee for the right to do so, but merely enters into an agreement with U-Haul to perform the services mentioned. The dealer receives a percentage of the gross rental fees and is paid for automative maintenance work done on the equipment. The title and the right to possession of the equipment remains in U-Haul. U-Haul provides a nationwide "do-it-yourself" moving service and, instead of doing all of the necessary work through employees, has utilized filling station operators who, as independent contractors, perform some of the needed services for the agreed upon fee.

As U-Haul expanded its line to more complex and sophisticated equipment, the nature of many American filling stations changed from a full-service garage to a semi or a full "self-service" station. Thus, as the complexity of U-Haul's equipment and services increased, the need for skilled mechanical help in America's filling stations decreased.

Due to the decrease in the ability of filling stations' management to service and maintain its equipment, U-Haul decided that in metropolitan areas it would retain direct possession of its equipment and would directly perform the rental, maintenance and other services to the public.

It was this change in circumstances and business judgment which led U-Haul to terminate Wipperfurth's dealership.

The dealership law when originally adopted in ch. 179, Laws of 1973, stated in sec. 135.03, Stats. 1973, that the law governed agreements entered into after April 5, 1974.[1] Therefore, in its original form the act was clearly prospective only.

---

[1] "135.03 **Cancellation and alteration of dealerships.** No grantor, directly or through any officer, agent or employe may terminate, cancel, fail to renew or substantially change the com-

Ch. 171, Laws of 1977, removed the obvious prospective clause and instead adopted a statement of purpose and legislative construction, sec. 135.025, Stats.[2]

Several arguments are made whether the law was intended to have retroactive interpretation and, if so, then whether it is an unconstitutional violation of the contract clause of the U. S. Constitution.

The legislature did remove the prospective only subsection and instead adopted sec. 135.025, Stats., and particularly (2)(d) which stated the chapter was "To govern *all* dealerships, including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States." (Emphasis added.) This language not only allowed for but invited court interpretation as to legislative intent. The courts were directed in sec. 135.025 that, "This chapter shall be liberally construed and applied to promote its underlying remedial purposes and policies."

Whatever the legislative intent was in regard to retroactive application of the dealership law, it was not clear-

---

petitive circumstances of a dealership agreement entered into after April 5, 1974 without good cause. The burden of proving good cause shall be on the grantor."

[2] "135.025 **Purposes; rules of construction; variation by contract.** (1) This chapter shall be liberally construed and applied to promote its underlying remedial purposes and policies.

"(2) The underlying purposes and policies of this chapter are:

"(a) To promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis;

"(b) To protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships;

"(c) To provide dealers with rights and remedies in addition to those existing by contract or common law;

"(d) To govern all dealerships, including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States.

"(3) The effect of this chapter may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only."

ly and affirmatively stated and therefore has caused conflicting opinions and decisions of the trial courts in this state.

The court of appeals decided the statute was not clear on its face as to its intent to be applied retroactively and therefore that court ruled:

"Since a serious question concerning the act's constitutionality would arise if the WFDL were given retroactive application, the court must conclude that the act covers only agreements entered into after April 5, 1974. This conclusion is supported by the ambiguity in the language of the act and the legislative history, which do not make explicit a requirement to apply the WFDL retroactively. Therefore, the general rule of the prospective operation of statutes applies in this case."[3]

Legislative intent as to retroactivity must be determined independent of the constitutionality of the action.

*Swanke v. Oneida County,* 265 Wis. 92, 99, 60 N.W.2d 756, 62 N.W.2d 7 (1953) stated:

" 'Retrospective operation is not favored by the courts, however, and a law will not be construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application. The rule is the converse of the general principle that statutes are to operate prospectively. . . .' "

The legislative history of this law and its present wording could be interpreted as displaying an intent by the legislature that the dealership law be applied prospectively and retroactively if permitted by the courts. This would be a surrender of the legislative authority over its use of police powers for public purposes. The determination then would be left to the courts on a case by case basis and would provide for uneven justice at best. Federal District Judge James E. Doyle, Western

---

[3] *Wipperfurth v. U-Haul of Western Wis., Inc.,* 98 Wis.2d 516, 523, 297 N.W.2d 65 (Ct. App. 1980).

District of Wisconsin, stated this also in *H. Phillips Co. v. Brown-Forman Distillers,* 483 F. Supp. 1289 (W.D. Wis. 1980) :

"I suggest that it would amount to something like this: We legislators desire the statute to apply to all dealerships, whenever granted; we recognize that constitutional questions exist with respect to its application to dealerships granted prior to April 5, 1974; we abandon our independent responsibility to construe and to honor constitutional limits upon our power; we leave it to the courts to limit application if they decide it must be limited." *Id.* at 1294.

That is an explanation for the language of sec. 135.025(2)(d), Stats., as follows: "To govern *all dealerships,* including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States." (Emphasis added.) In doing this the legislature also directed the courts at sec. 135.025 (1) to liberally construe and apply the chapter to promote its underlying remedial purposes and policies which are stated in subsection (2):

"The underlying purposes and policies of this chapter are:
"(a) To promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis;
"(b) To protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships;
"(c) To provide dealers with rights and remedies in addition to those existing by contract or common law;
". . . ."

On total consideration, this court determines from the legislative history and the language of the law that the intent of the legislature was to give retroactive as well as prospective application to ch. 135, Stats. That then requires the court's analysis of the conflict between

retroactive application and the constitutional prohibition against the impairment of the *obligation* of contract.[4]

In *Kuhl Motor Co. v. Ford Motor Co.*, 270 Wis. 488, 71 N.W.2d 420 (1955), the statute challenged was in effect at the time the agreement was made and so that case did not consider retroactive impairment of the obligation of contract.

The *Kuhl* case dealt with prospective application of legislation on the freedom to contract, while the instant case involves the retroactive application of legislation on the obligation of existing contracts.

The due process clause protects the *right* of contract, that is, the freedom of persons to enter into contracts which they find mutually agreeable. This right is not unlimited, however. It can be limited by the legitimate exercise of the state's police power. *Mulvaney v. Tri State Truck & Auto Body, Inc.*, 70 Wis.2d 760, 766, 235 N.W.2d 460 (1975) ; 16 C.J.S. *Constitutional Law* sec. 210 (1956). The *Kuhl* case dealt with a statute that forbade grantor-dealer contracts in the automobile business under which a dealer could be terminated without cause. The right of grantors and dealers to make such contracts was curtailed. In *Kuhl* the curtailment was found to be a legitimate exercise of police power.

This court stated in *State ex rel. Bldg. Owners v. Adamany,* 64 Wis.2d 280, 292, 219 N.W.2d 274 (1974) :

"We have thus accepted the proposition that the obligation of contract is not an absolute right, but is one that may be obliged to yield to the compelling interest of the public—the exercise of the police power."

---

[4] The United States Constitution, Art. I, sec. 10, clause 1 provides:

"No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."

The United States Supreme Court stated in *Berman v. Parker*, 348 U.S. 26, 32 (1954):

"Public safety, public health, morality, peace and quiet, law and order—these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs."

This court held in *Adamany, supra,* at 293 that the question to be answered by the court "is what value— of the type cited in *Berman*—is it vital to preserve, and is there some reasonable relationship between the preservation of that value and the method the legislature has employed to preserve it."

Thus, it can be determined this court recognizes retroactive application of legislation is permissible, however, in making such declaration the court referred to subjects of "public safety, public health, morality, peace and quiet, law and order" of the *Berman* case. Those subjects are not the limit of areas that can be affected retroactively, but they do describe the serious nature of permissible interference with the obligations of contracts.

The United States Supreme Court stated in *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 240 (1978):

"The language of the Contract Clause appears unambiguously absolute: 'No State shall . . . pass any . . . Law impairing the Obligation of Contracts.' U. S. Const., Art. I, sec. 10. The Clause is not, however, the Draconian provision that its words might seem to imply. As the Court has recognized, 'literalism in the construction of the contract clause . . . would make it destructive of the public interest by depriving the State of its prerogative of self-protection.' *W. B. Worthen Co. v. Thomas,* 292 U.S. 426, 433."

In the *Spannaus* case, the court stated at 241:

"First of all, it is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. 'It is the settled law of

this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' *Manigault v. Springs,* 199 U.S. 473, 480."

At 242 of *Spannaus:*

"If the Contract Clause is to retain any meaning at all, however, it must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power . . . .

"In *Home Building & Loan Assn. v. Blaisdell,* 290 U.S. 398, the Court . . . acknowledged that, despite the Contract Clause, the States retain residual authority to enact laws 'to safeguard the vital interests of [their] people.' *Id.,* at 434. In upholding the state mortgage moratorium law, the Court found five factors significant. First, the state legislature had declared in the Act itself that an emergency need for the protection of homeowners existed. *Id.,* at 444. Second, the state law was enacted to protect a basic societal interest, not a favored group. *Id.,* at 445. Third, the relief was appropriately tailored to the emergency that it was designed to meet. *Ibid.* Fourth the imposed conditions were reasonable. *Id.,* at 445–447. And, finally, the legislation was limited to the duration of the emergency. *Id.,* at 447."

In *W. B. Worthen Co. v. Thomas,* 292 U.S. 426 (1934), the court stressed the retroactive effect of the state law and held it "invalid under the contract clause, since it was not precisely and reasonably designed to meet a grave temporary emergency in the interest of general welfare." *Spannaus, supra,* at 243.

In *Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935), the court held a law invalid under the contract clause and Justice Cardozo wrote for the court, " 'Even when the public welfare is invoked as an excuse' . . . the security of a mortgage cannot be cut down 'without moderation or reason or in a spirit of oppression.' " *Spannaus, supra,* at 243.

In *United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977), the court again recognized that in spite of the absolute language of the clause, it "must leave room for 'the "essential attributes of sovereign power," . . . necessarily reserved by the States to safeguard the welfare of their citizens.' " *Spannaus, supra,* at 244. The court also stated in *Spannaus, supra,* at 244:

"Despite the customary deference courts give to state laws directed to social and economic problems, '[l]egislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption.' "

In *Spannaus* the court wrote:

"[T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." *Id.* at 244–45.

Next, the court looks to the degree of anticipation of the parties to expect interference with their reliance on the obligations of the contract.

The Supreme Court recognized a presumption favoring "legislative judgment as to the necessity and reasonableness of a particular measure." *United States Trust Co., supra,* at 23.

The dissent in the *Spannaus* case decided that the contract clause of the constitution did not apply due to a basic disagreement with the majority as to the reasons the framers of the constitution had for including that clause. The dissent applied an analysis of due process protection of the Fourteenth Amendment and found the Minnesota law being considered constitutional.

In applying the due process analysis, the dissent considered the parties' degree of reliance on the existing law when the contract was entered into and their anticipation for change or interference by the legislature. However, the dissent failed to concede that a prior contractual relationship between the parties should receive consideration when a statute is analyzed which has a social purpose which type always creates duties that burden one class of persons and benefit another.

The criticism of the dissent to the majority's reliance on the contract clause was stated as follows:

"Under the Court's opinion, any law that may be characterized as 'superimposing' new obligations on those provided for by contract is to be regarded as creating 'sudden, substantial, and unanticipated burdens' and then to be subjected to the most exacting scrutiny. The validity of such a law will turn upon whether judges see it as a law that deals with a generalized social problem, whether it is temporary (as few will be) or permanent, whether it operates in an area previously subject to regulation, and, finally, whether its duties apply to a broad class of persons. See *ante,* at 249–250. The necessary consequence of the extreme malleability of these rather vague criteria is to vest judges with broad subjective discretion to protect property interests that happen to appeal to them." *Id.* at 260–61.

The analysis of the dissent in *Spannaus* leaves only the test of reasonableness to be applied to the legislation and with a presumption in favor of reasonableness. The majority considers several tests to be applied—vested rights and reliance on them, the degree of infringement,

anticipation of change, length of effectiveness and reasonableness of the act as a solution for a serious social problem.

The test of the dissent is purely subjective and depends entirely on whether a majority agrees with the solution of the legislation to a social problem or even whether the problem exists or should be solved. It in effect is no test with any reliability and not worthy of being considered a legal standard.

This court in *Adamany, supra,* appeared to accept only the test of reasonableness of legislation as applied to the contract clause of the constitution (due process application was not discussed). At 301, the court stated:

"We will presume a constitutional purpose if there is any reasonable basis upon which the legislation can be explained by facts within the knowledge of this court. Those facts can be skeletal in nature and can be apparent from the face of the legislation. We would accept a legislative declaration explaining the purpose to be served by this act, for we presume that such declaration would have been founded upon legislative fact-finding. But such facts are totally absent here, and only speculatively can we justify this legislation. Speculation, however, can also lead to conclusions that are contrary to those urged by the defenders of this law."

The foregoing would not provide any judicial test to the legislation, and it was not the rule in the *Adamany* case.

The court in *Adamany* also stated at 299:

"This court adheres to the basic philosophy of *Kuhl, supra,* that an unequivocal legislative declaration of public policy, made either before or after the execution of a contract, becomes a part of that contract if the legislature makes it clear that such is its intention and if it can be determined, either by recitals in the legislation or by judicial notice, that vital public interests will be impaired if the legislation is not given effect and vital interests will be enhanced by enforcement of the legislation."

*Kuhl* did not consider retroactivity as stated in this quote, since there the law was in existence when the contract was executed and therefore the issue was not the impairment of the obligation of contract, but rather the right to the freedom to contract.

Finally, in *Adamany*, the court stated:

"Hence, it seems clear that, for the police power of the state of Wisconsin to affect the constitutionally protected right of contract, there should be evidence that the legislation is necessary for the vital interests of the people of the state. . . .

". . .

"A statute that seeks to modify, by the invocation of the police power, a constitutionally guaranteed right, such as the right of contract, should be carefully drawn to show that the use of such power is necessary and exigent and serves a vital purpose of government. While courts are willing to indulge any reasonable presumption to sustain police-power-type legislation, they ought not be asked to speculate or conjure up possible explanations to support a legislative act." *Id.* at 300–03.

There has been no showing that the severe disruption of contractual expectations of these parties was necessary to meet an important social problem. The retroactive application of the dealership law on this existing contract with its established obligations was severe as to substantive rights of the contract not only as to remedy of the parties. Retroactive application here affected vested rights and obligations substantially. The dealership law was not so carefully drawn to show the use of the police power was reasonably necessary and exigent and it served a vital purpose of government to retroactively affect contracts in existence when it was made law. In fact, the equivocating language of sec. 135.025 (2) (d), Stats., does not demonstrate the legislative determination of necessity to apply police power retroactively. Therefore, the court holds retroactive applica-

tion of ch. 135, Stats., is prohibited as unconstitutional by Art. I, sec. 10 of the United States Constitution.

*By the Court.*—The decision of the court of appeals is affirmed.

STEINMETZ, J. *(concurring).* This writer would hold that the distinction discussed in the majority opinion between the right to contract and the obligation of contract is one that leads to a significant difference.

The framers of the constitution considered having the ex post facto law prohibition in the constitution applicable to the obligation of contract impairment. However, due to Blackstone's commentaries on the English common law at the time, the constitution was adopted with the distinction made.[1]

The belief was that the obligation of contract needed protection from interference, as well as protecting against ex post facto laws and therefore each needed a separate statement.

The obligation of contract and ex post facto clauses are both in the same section of the constitution, Art. I, sec. 10. The dual statement of protection was done to accommodate the existing common law distinctions as a compromise to accommodate adoption of the constitution.[2]

The United States Supreme Court in cases cited in the majority opinion has held that "the contract clause does not operate to obliterate the police power of the States." However, it carries with it protections so that when the state decides to avoid it or deliberately contravene it by a retroactive invasion of contracts by law, the state, or the party relying on the effectiveness of the legislation,

---

[1] Blackstone asserted ex post facto prohibition applied to criminal laws only.

[2] Z. Chafee, Jr., *Three Human Rights in the Constitution*, University of Kansas Press, Library of Congress Catalog No. 56–9451 (1956).

must be prepared to produce facts to uphold the statute. Certainly, the challenger of the statute is required to show the law works a substantial impairment of the contract terms by clear and convincing proof. Once that is done, however, the state, or in this case Wipperfurth, the party relying on the statute, must demonstrate a compelling public interest is served by the law or the social need for the invasion of the obligation of existing contracts. There is no burden of proof, but rather a standard of review must be applied by the courts. Wipperfurth in this case was required to come forward with proof of facts demonstrating there is a social need and that public interest is present sufficiently to abrogate the constitutional provision. The constitution is the basic and fundamental contract between government and its citizens.

There has been a distinction in analysis by the courts between cases involving the right to contract which is a liberty interest protected by the Fourteenth Amendment and the constitutional prohibition against the impairment of the obligations of existing contracts.

Where liberties are considered in the right to contract, it is a matter of balancing of interests between conflicting rights in society. Here the legislature has plenary powers to declare reasonable classifications of interests so that due process and equal protection are provided, but the legislature is limited by a prohibition against making invidious distinctions. In the case of prospective laws, the challenger of the legislation has the burden of persuading the courts beyond a reasonable doubt the unconstitutionality of the act. It is reasonable and proper to so place the burden of persuasion since the legislature is presumed to act constitutionally and courts will make every effort to save legislation.

However, when the state directly and intentionally acts invading the constitutional protection of the obliga-

tion of contract clause through retroactive legislation, it is only reasonable the state has the obligation of coming forward with facts to show the exercise of its police power was necessary, reasonable and that vital public interests will be impaired if the legislation is not given effect.

Alexander Hamilton in the *Federalist,* No. 78 stated, "or, in other words, the Constitution ought to be preferred to the statute, the intention of the people to the intention of their agents."

Three major factors in specific areas of concern will be examined:

"[T]he nature and strength of the public interest served by the statute, the extent to which the statute modifies or abrogates the asserted preenactment right, and the nature of the right which the statute alters."[3]

When considering the retroactive application of a statute on the obligation of a contract, the tests that will be applied depending on the circumstances involved are the effect on vested rights, the degree of effect being minimal or substantial, the reliance on past rules and regulations, anticipation of change, reasonableness of the solution to a social problem, the extent of the population affected, length of time the legislation will apply (temporary or permanent), and is the effect on substantive rights and obligations of contract or remedies.

The distinction between the right to contract and the constitutionally protected obligations of contract is recognized by legal texts and legal writers.

16A C. J. S. *Constitutional Law* sec. 575, at 607–09 (1956) states:

"The right to make legal contracts of all kinds, without fraud or deception, is not only a part of the civil liberty possessed by every individual who is sui juris,

---

[3] Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 697 (1960).

but is both a liberty and a property right within the protection of the guaranties against the taking of liberty or property without due process of law. *The liberty of contract* which is guaranteed by due process of law clauses in constitutional provisions is freedom from arbitrary or unreasonable restraint; and neither the state nor federal governments may impose such restraint. While freedom of contract is not an absolute, but a qualified, right, and is, therefore, subject to reasonable restraint in the interest of the public welfare, . . . nevertheless, freedom is the general rule and restraint or abridgment is an exception which can be justified only by the existence of exceptional circumstances." (Emphasis added.)

16 C. J. S. *Constitutional Law,* sec. 274 at 1272 (1956) states:

"The federal and state constitutions contain provisions which in different language but with essentially the same effect forbid the impairment of *the obligation of contracts* that are lawful when made and that are not subject to the fair exercise of sovereign governmental power to conserve the general welfare. Such provisions are mandatory, and apply alike to all contracts and protect all obligations of such contracts from destruction or impairment by subsequent legislation." (Emphasis added.)

16A Am. Jur.2d, *Constitutional Law,* sec. 591 (1979) at 522 states:

"Although the term *'freedom of contract'* does not appear in the United States Constitution, and has been described as an abstract doctrine, it has been held or recognized by the courts that freedom of contract is a part of the liberty protected by the due process clauses of the Fifth and Fourteenth Amendments." (Emphasis added.)

At 525 the following is stated:

"It has been said that the *right of liberty of contract* differs from a fundamental constitutional right, from the right of liberty of the body or person, from the right of property, including the obligation of existing contracts, from the right of equality, and from the right

of political liberty, in that it is not a vested right, a right of definite content, or a right protected by specific constitutional guaranties. Elsewhere the position has been taken that liberty of contract is a fundamental right." (Emphasis added.)

The same distinction is made in Freund, *Police Power*, sec. 499 (1904).

16A Am. Jur.2d, *Constitutional Law*, sec. 687 (1979) at 682 states: "The term 'contract' is used in its ordinary sense in the clause of the United States Constitution forbidding state legislation impairing the obligation of contracts."

Sec. 689 at 687–88 states:

"Although a statute tending to impair the obligation of a contract is inoperative as to contracts existing at the time of its passage, it may nevertheless be valid and operative as to future contracts. The provision of the Constitution which declares that no state shall pass any law impairing the obligation of contracts does not apply to a law enacted prior to the making of a contract the obligation of which is claimed to be impaired, but only to a statute of a state enacted after the making of the contract. The obligation of a contract cannot properly be said to be impaired by a statute in force when the contract was made, for in such cases it is presumed that it was made in contemplation of the existing law. The state, therefore, may legislate as to future contracts as it sees fit, and accordingly, if a law is prospective only, it is—so far as the guaranty of obligation of contracts is concerned—valid."

This court has recognized the distinction between the prospective right to contract and obligations of contracts already in existence when a statute becomes effective.

In *Trading Stamp Cases*, 166 Wis. 613, 618, 166 N.W. 54 (1917), the court decided:

"(3) The act is not unconstitutional as impairing the obligation of contract; it being prospective in its operation, and does not affect the use of trading stamps, tokens, tickets, bonds, or similar devices in connection with sales made before it goes into effect."

In *Pawlowski v. Eskofski*, 209 Wis. 189, 193, 244 N.W. 611 (1932) this court discussed United States Supreme Court cases on the subject as follows:

"That court long ago held that any statute, whether remedial or not, that operated to deprive a party to a contract antedating the enactment of the statute of any valuable right secured to him by that contract is void as to that contract. *Edwards v. Kearzey*, 96 U.S. 595. If a statute substantially lessens the value of a pre-existing contract the constitutional provision bars application of it to the contract. Many decisions of the supreme court of the United States have so held. This was held as far back as 6 Howard, where it is said in *Planters' Bank v. Sharp* (p. 327):

" 'One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force.' "

This may be historic law applied to retroactivity but it shows this court and the U. S. Supreme Court have each recognized the distinction between "obligation of" and "freedom to" contract.

In *Cleary v. Brokaw*, 224 Wis. 408, 417–18, 272 N.W. 831 (1937), the court cited *McCracken v. Hayward*, 2 How. 608, 611 as follows:

" '. . . The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. . . . When it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of

the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution.' "

In the same case at 420, the court stated, "Whether her rights may be violated in the future presents another question."

In *Guardianship of Banski*, 226 Wis. 361, 366, 276 N.W. 626 (1937) the court honored the distinction between "obligation of" and "right to" contract as follows:

"It is, of course, competent for a state to regulate priorities as between creditors whose debts are contracted after the passage of the statute. *Abilene Nat. Bank v. Dolley*, 228 U.S. 1, 33 Sup. Ct. 409."

In *Chippewa Valley Securities Co. v. Herbst*, 227 Wis. 422, 425, 278 N.W. 872 (1938) the court cited 6 Page, Contracts, sec. 3676 as follows:

" 'A law in force when a contract is made is part thereof. Whatever objections may be made to the validity of such law, it does not impair the obligation of such contracts. To be invalid as impairing the obligation of contracts a statute "must be one enacted after the making of the contract, the obligation of which is claimed to be impaired." ' "

In the same *Chippewa Valley Securities Co.* case, the court ruled the statute under consideration did not unreasonably deprive the plaintiff of its "right to" contract and did not therefore deprive the plaintiff of property without due process.

Historically, this court has applied the due process standard of the Fourteenth Amendment to prospective legislation. In doing this, however, the court has not always placed the burden of showing the statute unconstitutional beyond a reasonable doubt on the challenger.

In the following cases of challenge to the constitutionality of legislation, the court did not discuss the standard

nor burden: *Knowlton v. Supervisors of Rock County,* 9 Wis. 378 (*410) (1859) ; *State ex rel. Northern Pac. R. Co. v. Railroad Commission,* 140 Wis. 145, 121 N.W. 919 (1909) ; *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 125 N.W. 961 (1910) ; *Nitka v. Western Union Tel. Co.,* 149 Wis. 106, 135 N.W. 492 (1912) : *Ekern v. McGovern,* 154 Wis. 157, 142 N.W. 595 (1913) ; *Outagamie County v. Zuehlke,* 165 Wis. 32, 161 N.W. 6 (1917) ; *Jessner v. State,* 202 Wis. 184, 231 N.W. 634 (1930) ; *State ex rel. Wisconsin Dev. Authority v. Dammann,* 228 Wis. 147, 277 N.W. 278, 280 N.W. 698 (1938) ; *Cutts v. Department of Public Welfare,* 1 Wis.2d 408, 84 N.W.2d 102 (1957) ; *Bisenius v. Karns,* 42 Wis.2d 42, 165 N.W.2d 377 (1969).

The foregoing cases involved challenges to statutes involving classification, equal protection or uniform taxation prospectively applied.

The following cases of challenge to prospective statutes applied the standard of unconstitutionality being required to be proven beyond a reasonable doubt and the burden being on the challenger: *Norton v. Rooker—Rooker v. Norton,* 1 Wis. (Pin.) 195 (1842) ; *State ex rel. Chandler v. Main,* 16 Wis. 422 (*398) (1863) ; *Northwestern National Bank of Superior v. City of Superior,* 103 Wis. 43, 79 N.W. 54 (1899) ; *State ex rel. Busacker v. Groth,* 132 Wis. 283, 112 N.W. 431 (1907) ; *Bonnett v. Vallier,* 136 Wis. 193, 116 N.W. 885 (1908) ; *Lawrence University v. Outagamie County,* 150 Wis. 244, 136 N.W. 619 (1912) ; *Peterson v. Widule,* 157 Wis. 641, 147 N.W. 966 (1914) ; *Pauly v. Keebler,* 175 Wis. 428, 185 N.W. 554 (1921) ; *State ex rel. Carnation M. P. Co. v. Emery,* 178 Wis. 147, 189 N.W. 564 (1922) ; *Building Height Cases,* 181 Wis. 519, 195 N.W. 544 (1923) ; *La Crosse v. Elbertson,* 205 Wis. 207, 237 N.W. 99 (1931) ; *Petition of Breidenbach,* 214 Wis. 54, 252 N.W. 366 (1934) ; *Doering v. Swoboda,* 214 Wis. 481, 253 N.W. 657 (1934) ; *Appeal of Van Dyke,* 217 Wis. 528, 259 N.W. 700 (1935) ;

*State ex rel. Atty. Gen. v. Wisconsin Constructors,* 222 Wis. 279, 268 N.W. 238 (1936) ; *State ex rel. Sullivan v. Dammann,* 227 Wis. 72, 277 N.W. 687 (1938) ; *School Dist. v. Callahan,* 237 Wis. 560, 297 N.W. 407 (1941) ; *A B C Auto Sales, Inc. v. Marcus,* 255 Wis. 325, 38 N.W.2d 708 (1949) ; *Madison Metropolitan Sewerage Dist. v. Committee,* 260 Wis. 229, 50 N.W.2d 424 (1951) ; *State ex rel. Reuss v. Giessel,* 260 Wis. 524, 51 N.W.2d 547 (1952) ; *State ex rel. Broughton v. Zimmerman,* 261 Wis. 398, 52 N.W.2d 903 (1952) ; *State v. Stehlek,* 262 Wis. 642, 56 N.W.2d 514 (1953) ; *Madison v. Chicago, M., St. P. & P. R. Co.,* 2 Wis.2d 467, 87 N.W.2d 251 (1958) ; *School Dist. v. Marine Nat. Exchange Bank,* 9 Wis.2d 400, 101 N.W.2d 112 (1960) ; *State ex rel. Mc-Cormack v. Foley,* 18 Wis.2d 274, 118 N.W.2d 211 (1962) ; *Chicago & N. W. R. Co. v. La Follette,* 27 Wis.2d 505, 135 N.W.2d 269 (1965) ; *State ex rel. La Follette v. Reuter,* 36 Wis.2d 96, 153 N.W.2d 49 (1967) ; *Dane County v. McManus,* 55 Wis.2d 413, 198 N.W.2d 667 (1972) ; *Ortman v. Jensen & Johnson, Inc.,* 66 Wis.2d 508, 225 N.W.2d 635 (1975) ; *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978) ; *State v. Hart,* 89 Wis.2d 58, 277 N.W.2d 843 (1979).

Also, there are cases involving the challenge to prospective legislation where the standard applied varied as follows: *State ex rel. Grundt and others v. Abert,* 32 Wis. 403 (1873) (courts will not hold an act unconstitutional unless it is clearly so) ; *Atkins and others v. Fraker,* 32 Wis. 510 (1873) (constitutional if its words fairly admit of such a construction) ; *Bound v. The Wisconsin Central Railroad Company and others,* 45 Wis. 543 (1878) (place a construction as will reconcile statutes to the constitution) ; *Palms and another v. Shawano County and others,* 61 Wis. 211, 21 N.W. 77 (1884) (a legislative act should, if possible, be so construed as not to conflict with the constitution and that it may be upheld) ; *State ex rel. Hicks v. Stevens,* 112 Wis. 170, 88

N.W. 48 (1901) (if there is a reasonable construction which will uphold it and at the same time preserve the constitution from infraction, the court is bound to adopt it) ; *Chicago & N. W. R. Co. v. The State,* 128 Wis. 553, 108 N.W. 557 (1906) (there is a presumption the legislature intended a valid enactment, and it is to be sustained if in any reasonable view thereof it can be fairly read in harmony with constitutional requirements) ; *In re Appointment of Revisor,* 141 Wis. 592, 124 N.W. 670 (1910) (sustained if possible by any reasonable construction of the constitution or of the act itself—and all mere doubts as to its validity are to be solved in favor of the act) ; *State ex rel. Dulaney v. Nygaard,* 174 Wis. 597, 183 N.W. 884 (1921) (the question of whether a law should be held void because of its repugnance to the constitution is one of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case) ; *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 197 N.W. 578 (1924) (a construction is not to be given to a statute that will make it absurd or unconstitutional if any other construction is permissible) ; *Dick v. Heisler,* 184 Wis. 77, 198 N.W. 734 (1924) (must construe a statute as constitutional if reasonably possible to do so) ; *State ex rel. Fulton v. Zimmerman,* 191 Wis. 10, 210 N.W. 381 (1926) (sustain the legislation if possible by any reasonable construction thereof or by any reasonable construction of the constitution—all doubts of the legislature's power or as to legality being resolved in favor of the validity) ; *State v. Langlade County Creamery Co.,* 193 Wis. 113, 213 N.W. 664 (1927) (it is the duty of the court to give acts a construction that will bring them into harmony with the provisions of the constitution) ; *State ex rel. Reynolds v. Sande,* 205 Wis. 495, 238 N.W. 504 (1931) (a statute should be held valid whenever by any fair interpretation it may be construed to serve a constitutional purpose) ; *United G., C. & C. Workers v. Wis. E. R. Board,* 255 Wis. 154,

38 N.W.2d 692 (1949) (when reasonably possible, a statute will be held valid rather than invalid) ; *Heimerl v. Ozaukee County,* 256 Wis. 151, 40 N.W.2d 564 (1949) (a statute should be held valid whenever by any fair interpretation it may be construed to serve a constitutional purpose) ; *Estate of Ogg,* 262 Wis. 181, 54 N.W.2d 175 (1952) (it is the duty of the court to so construe a statute as to uphold its validity, if the resulting construction is one that is reasonable and does not lead to an absurd result) ; *State ex rel. Thomson v. Zimmerman,* 264 Wis. 644, 60 N.W.2d 416, 61 N.W.2d 300 (1953) (there is a presumption that all acts of the legislature are constitutional until established otherwise) ; *State ex rel. Thomson v. Giessel,* 265 Wis. 558, 61 N.W.2d 903 (1953) (all doubts as to its constitutionality must be resolved in favor of its validity) ; *State ex rel. Smith v. Zimmerman,* 266 Wis. 307, 63 N.W.2d 52 (1954) (legislation is presumed to be constitutional unless clearly established otherwise—the obligation of the court to the constitution is superior to the obligation of the court to an act of the legislature) ; *David Jeffrey Co. v. Milwaukee,* 267 Wis. 559, 66 N.W.2d 362 (1954) (validity must be sustained unless it palpably contravenes a provision of the state or federal constitution and the supreme court is bound to give an act a construction that will avoid constitutional objections to its validity if the act will bear such construction) ; *Adoption of Morrison,* 267 Wis. 625, 66 N.W.2d 732 (1954) (a statute is presumed to be constitutional and the party attacking it has the burden of overcoming the presumption and showing it to be unconstitutional) ; *State ex rel. Harvey v. Morgan,* 30 Wis.2d 1, 139 N.W. 2d 585 (1966) (court will not impugn the motives of the legislature, but rather, if possible, to so construe the statutes as to find it in harmony with accepted constitutional principles) ; *Gottlieb v. Milwaukee,* 33 Wis.2d 408, 147 N.W.2d 633 (1967) (court must find a statute con-

stitutional if it is at all possible to do so—all legislative acts are presumed constitutional and every presumption must be indulged to sustain the law if at all possible—if any doubt exists, it must be resolved in favor of the constitutionality of a statute) ; *Watchmaking Examining Bd. v. Husar,* 49 Wis.2d 526, 182 N.W.2d 257 (1971) (the statute is presumed to be constitutional and a heavy burden is placed on the challenger) ; *State v. Mahaney,* 55 Wis.2d 443, 198 N.W.2d 373 (1972) (if doubt exists, it should be resolved in favor of the constitutionality) ; *Omernik v. State,* 64 Wis.2d 6, 218 N.W.2d 734 (1974) (legislative classification is presumed valid—the burden of proof is on the challenging party to establish invalidity of a statutory classification—any reasonable basis for the classification will validate the statute) ; *WKBH Television, Inc. v. Dept. of Revenue,* 75 Wis.2d 557, 250 N.W. 2d 290 (1977) (there is a strong presumption that legislative enactments are constitutional and a heavy burden is placed on the challenger asserting the unconstitutionality of the statute) ; *Hopper v. Madison,* 79 Wis. 2d 120, 256 N.W.2d 139 (1977) (there is a strong presumption that legislature's acts are constitutional, and it is duty of court to so construe a statute if possible).

Additional cases where the standard of proof for establishing unconstitutionality of a statute beyond the reasonable doubt is not clearly and definitively stated are: *Bigelow v. The West Wisconsin Railway Company,* 27 Wis. 478 (1871) ; *State ex rel. Gubbins v. Anson,* 132 Wis. 461, 112 N.W. 475 (1907) ; *State ex rel. Scanlan v. Archibold,* 146 Wis. 363, 131 N.W. 895 (1911) ; *Milwaukee County v. Halsey,* 149 Wis. 82, 136 N.W. 139 (1912) ; *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.,* 183 Wis. 47, 197 N.W. 352 (1924) ; *Malinowski v. Moss,* 196 Wis. 292, 220 N.W. 197 (1928) ; *State ex rel. Blockwitz v. Diehl,* 198 Wis. 326, 223 N.W. 852 (1929) ; *Barth v. Shorewood,* 229 Wis. 151, 282 N.W. 89 (1938) ; *Estate*

*of Nieman,* 230 Wis. 23, 283 N.W. 452 (1939) ; *Estate of Ogg,* 262 Wis. 181, 54 N.W.2d 175 (1952) ; *State ex rel. Real Est. Exam. Bd. v. Gerhardt,* 39 Wis.2d 701, 159 N.W.2d 622 (1968).

The U-Haul Company in the circumstances of this case came forward with evidence showing the retroactive application of the dealership law had a substantial effect on the obligations of the contract between itself and Wipperfurth. Once that was established, Wipperfurth did not demonstrate nor offer facts beyond the equivocating language of the statute. The statute stated an economic need to even bargaining power. It did not state a general social need nor the interest of the public generally would be served by the retroactive impairment of the obligation of contract.

Had the impairment of the obligation in this case been minimal, the quantity or quality of Wipperfurth's evidence might not have been considered since first, the challenger of the law would not have shown a substantial impairment for entitlement to the constitutional protection of contract clause. Once, however, substantial impairment of obligations is demonstrated by the challenger, the party relying on the legislation must come forward with facts demonstrating to the courts the compelling public necessity or that there is a social need requiring the exercise of the state's police power. Wipperfurth has failed to do that in this case.

For the reasons in the majority opinion and this concurring opinion, this writer would find unconstitutional the retroactive application of ch. 135, Stats., to the obligation of existing contracts.