**Gregory P. VAN, Plaintiff,**

v.

**MOBIL OIL CORPORATION, Defendant.**

**No. 80–C–130.**

United States District Court, E. D. Wisconsin.

May 20, 1981.

---

John A. Busch, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff.

Ronald M. Wawrzyn, Foley & Lardner, Milwaukee, Wis., for defendant.

### MEMORANDUM AND ORDER

WARREN, District Judge.

On February 13, 1980, plaintiff Gregory P. Van instituted this action seeking recovery for damages he claims he suffered as a result of defendant Mobil Oil Corporation's alleged violations of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, and the Wisconsin Fair Dealership Law, § 135.01 *et seq.*, Wis.Stats. Currently pending before the Court is defendant's motion for summary judgment.

## I. *Background*

The following facts are not in dispute. On or about April 29, 1977, plaintiff and defendant executed a retail dealers contract under the terms of which plaintiff became a Mobil dealer at 1033 North Street, Green Bay, Wisconsin, for a period of five years, ending June 30, 1982. Commencing in 1977, plaintiff purchased gasoline from defendant on a load-to-load or previous-load basis ("PLB"). Under the PLB system, plaintiff paid for each load of gasoline after he sold it, tendering the money when the next load was delivered.

In November of 1978, plaintiff issued a check to defendant to pay for a previous load of gasoline. The check was returned to defendant marked "non-sufficient funds." Thereafter, defendant required a certified check from plaintiff, but still agreed to supply him with gasoline on the PLB system.

In late November or early December of 1978, plaintiff began to experience problems with his gas dispensers. He contacted a Green Bay firm to determine how much it would cost him to repair the dispensers. Because he could not afford to pay the $7,000.00 he was told it would cost to repair the dispensers, plaintiff stopped selling Mobil gasoline. He received his last load of gasoline from defendant in January of 1979.

At the time he stopped selling Mobil gasoline, plaintiff still owed defendant money. In February, 1979, plaintiff met with R.G. Gundersen, defendant's marketing representative. Plaintiff asked Mr. Gundersen whether he could pay the balance due defendant over time so he could accumulate cash to repair the dispensers. He also asked whether he would be able to buy gasoline under the PLB system once his dispensers were repaired. Mr. Gundersen answered yes to both questions.

Plaintiff gradually paid off most of his debt and arranged to have his dispensers repaired. The dispensers became totally operable again in April, 1979. Within two weeks of repairing the dispensers, plaintiff was able to pay the balance his records showed he owed defendant. Plaintiff then called Mr. Gundersen who assured him he would arrange for the delivery of gasoline.

Following plaintiff's discussion with Mr. Gundersen, defendant informed plaintiff that he still owed it $1,200.00. Plaintiff disputed the amount but eventually paid it in full after receiving assurance that he could obtain a load of gasoline PLB after he paid the money. Plaintiff ordered gasoline four or five times but never received it.

In early June of 1979, Frederick Bowes, plaintiff's banker, contacted defendant and was told that defendant would sell plaintiff gasoline only on a C.O.D. basis. Shortly thereafter, plaintiff, Mr. Bowes, Mr. Gundersen and another Mobil representative met at the gas station. At that meeting, defendant's representatives told plaintiff he had been placed on C.O.D. status because he had neglected to pay off the balance outstanding from his January load. Plaintiff then learned that defendant would not even consider supplying him with gasoline under the PLB system unless he first supplied defendant with a $10,000.00 letter of credit. Plaintiff did not obtain the letter of credit.

After deciding he could not continue in business receiving gas on a C.O.D. basis, plaintiff sold his station. His last day of business was May 12, 1980.

On February 13, 1980, nearly five months prior to his last day of business, plaintiff filed his original complaint in this action. In that complaint, plaintiff alleged that defendant's refusal to deliver gasoline and the change from PLB delivery to C.O.D. delivery constituted a change in competitive circumstances and constructive termination. Plaintiff also alleged that the change in competitive circumstances and constructive termination was done without good cause as defined in section 135.02(6) of the Wisconsin Statutes and without proper notice as provided in section 135.04 of the Wisconsin Statutes.

On July 15, 1980, the Court granted plaintiff's motion to add a second count to his complaint. In his second count, plaintiff alleged that defendant's actions constituted a termination and/or failure to review the

franchise as those terms are defined in 15 U.S.C. § 2802 *et seq.* In addition, plaintiff alleged that the termination and/or failure to renew the franchise was not based upon an event which was relevant to the franchise relationship, was not reasonable and was done without proper notice, all in contravention of 15 U.S.C. § 2801 *et seq.*

## II. *Motion for Summary Judgment*

In its motion for summary judgment, defendant argues that summary judgment in its favor is appropriate as to both counts of plaintiff's complaint. First, defendant maintains that plaintiff's claim under the Wisconsin Fair Dealership Law is inactionable because its actions did not constitute a "substantial change in competitive circumstances." Second, defendant contends that plaintiff's Petroleum Marketing Practices Act (PMPA) claim is inactionable because plaintiff was never terminated.

A motion for summary judgment may be granted only if the pleadings, affidavits and other documents filed in the action show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Because the material facts are not in dispute, the Court must only determine whether defendant is entitled to judgment as a matter of law.

## A. *Wisconsin Fair Dealership Law Claim*

The question the Court must address with regard to plaintiff's claim under the Wisconsin Fair Dealership Law is whether defendant's actions substantially changed the competitive circumstances of the dealership agreement. This question is central to this action because under Wis.Stat. § 135.03,

> No grantor, directly or through any officer, agent or employee, may terminate, cancel, fail to renew or *substantially change the competitive circumstances of a dealership agreement* without good cause. The burden of proving good cause is on the grantor. (emphasis added.)

Plaintiff maintains the PLB system was vital to the operation of his dealership because under that system, he was not required to pay substantial sums for gasoline until after he sold it. He asserts defendant's refusal to allow him to continue payment on the PLB basis constituted a substantial change in competitive circumstances because it would have been virtually impossible for him to operate without the PLB system.

Defendant responds to plaintiff's claim with three arguments. First, it maintains that it did not change any competitive circumstances but merely told plaintiff it could not deliver gasoline until plaintiff's bills were paid. Second, it contends the change from PCB status to C.O.D. status did not constitute a substantial change in competitive circumstances. Third, it argues that section 135.03 does not apply because that section only applies to changes "in the dealership agreement." According to defendant, it at no time changed its dealership agreement with plaintiff.

■ At the outset, the Court rejects defendant's contention that, as a matter of law, the change in credit terms did not constitute a change in plaintiff's competitive circumstances. Although the change may have amounted to nothing more than the adoption of a prudent business practice to defendant, to plaintiff it constituted a barrier which had to be overcome before he could continue operating his franchise.

A mere change in competitive circumstances does not, of course, bring the Wisconsin Fair Dealership Law into play, for the change must constitute a substantial change in competitive circumstances. Case law is slim as to what changes constitute substantial changes. In fact, the parties have pointed to only one case in which the issue was directly confronted. In *Madison Truck Plaza, Inc., et al. v. Union Oil Company of California*, Case No. 519–821 (Milwaukee County Circuit Court, June 2, 1980), Judge Gram held that the imposition by defendant on plaintiff dealers of a 2.5 percent charge on certain credit transactions did not substantially change the competitive circumstances of the dealership agreement. Although he believed the change

increased, or at least shifted the cost of credit, he did not believe the change altered the competitive circumstances of the dealership agreement.

The case at bar differs vastly from the case Judge Gram decided. The change in the instant case affected only one dealer rather than all dealers in similarly situated positions as in *Union Oil*. Consequently, unlike the plaintiffs in *Union Oil*, defendant's competitive position vis-a-vis other dealers was affected on both the intra-company level and the inter-company level. Furthermore, in *Union Oil* the change affected only credit sales, whereas here plaintiff's ability to obtain *any* gasoline from defendant was affected. Finally, there was no indication in *Union Oil* that the change would affect the plaintiffs' abilities to continue in business, whereas in the present action defendant was well aware of plaintiff's precarious financial condition and may have known that the change in credit terms could affect his ability to stay in business.

■ The nature of plaintiff's business financial condition at the time of the credit change; defendant's knowledge of that condition; the wide-reaching impact the change had on plaintiff's ability to even do business with defendant; and the actual effect of the change lead the Court to reject defendant's contention that the change from PLB credit basis to C.O.D. status did not constitute a substantial change in plaintiff's competitive circumstances.

■ The Court also rejects defendant's contention that the change in credit terms did not constitute a change in its dealership agreement with plaintiff. Under section 135.02, an agreement either expressed or implied, whether oral or written, can be a dealership agreement. Because there was, at the very least, an implied agreement to deliver plaintiff gasoline on PLB status and because that arrangement was altered, the Court is of the opinion that defendant's actions constituted a change in the parties' dealership agreement.

Based on the foregoing, defendant's motion for summary judgment as to plaintiff's first cause of action must be and is hereby denied.

### B. *Petroleum Marketing Practices Act Claim*

Unlike the Wisconsin Fair Dealership Law, the Petroleum Marketing Practices Act does not specifically require good cause and notice before a grantor can substantially change the competitive circumstances of a dealership agreement. Despite the lack of such a specific provision, plaintiff nevertheless contends that the Act applies to the case at bar. Specifically, he contends that the defendant's refusal to continue selling gasoline to plaintiff on a PLB basis constituted a failure to renew his agreement.

Defendant contends there was no failure to renew because the agreement between the parties was in effect at the time plaintiff sold his dealership and would have remained in effect through June 30, 1982 had plaintiff not sold the station.

To determine whether defendant's action constituted a failure to renew, it is necessary to turn to the definition of that phrase contained in the Act. According to 15 U.S.C. § 2801(14):

> The terms 'fail to renew' and 'nonrenewal' mean, with respect to any franchise relationship, a failure to reinstate, continue, or extend the franchise relationship—
>
> (A) at the conclusion of the term, or on the expiration date, stated in the relevant franchise;
>
> (B) at any time, in the case of the relevant franchise which does not state a term of duration or an expiration date; or
>
> (C) following a termination (on or after the date of enactment of this Act [enacted June 19, 1978]) of the relevant franchise which was entered into prior to such date of enactment and has not been renewed after such date.

■ A review of the subsections of section 2801(14) leads the Court to conclude defendant's actions did not constitute a failure to renew under that section. Section A does not bring defendant's actions under the Act because they did not occur on the

expiration date of the agreement. Section B does not apply because the dealership agreement did contain an expiration date. Section C does not apply because defendant never terminated or cancelled plaintiff's franchise agreement.

Based on the foregoing, the Court finds that defendant's action constituted neither a termination nor a failure to renew as those terms are defined in the PMPA. Therefore, defendant's motion for summary judgment as to count two of plaintiff's complaint must be and is hereby granted.

Having granted summary judgment in defendant's favor as to count two of the complaint, the Court must now determine whether defendant should be awarded attorney's fees. Under 15 U.S.C. § 2805(d)(3), a district court may, in its discretion, direct that reasonable attorney and expert witness fees be paid by the franchise if the Court finds that such was frivolous.

■ Because defendant was forced to expend little effort in fending off plaintiff's PMPA claim and because the Court has rejected defendant's contention that plaintiff's Fair Dealership claim is inactionable, the Court is of the opinion that attorney's fees should not be awarded. Accordingly, defendant's request for attorney's fees under 15 U.S.C. § 2805(d)(3) is denied.

### III. *Summary*

Based on the foregoing,

(1) Defendant's motion for summary judgment as to count one of the complaint is denied.

(2) Defendant's motion for summary judgment as to count two of the complaint is granted.

(3) Defendant's request for attorney's fees is denied.

(4) The Court will hold a final pretrial conference on *Wednesday, July 8, 1981 at 9:00 a. m.* The parties are to submit their final report at least 48 hours prior to that conference.