Lawrence J. ROCHESTER, d/b/a Royal of Wisconsin, Plaintiff,

v.

ROYAL APPLIANCE MFG. CO., Defendant.

No. 82–C–958.

United States District Court, W.D. Wisconsin.

Aug. 25, 1983.

---

Lund, Harrold, Cook & Danner, Minocqua, Wis., for plaintiff.

Calfee, Halter & Griswold, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court are cross motions for summary judgment in this action under the Wisconsin Fair Dealership Law ("WFDL"). Central to both motions is the issue of whether the relationship between the parties is covered by the WFDL, it being undisputed that the relationship began prior to the effective date of the law.

Jurisdiction is based on 28 U.S.C. § 1332, the parties being of diverse citizenship and the amount in controversy exceeding $10,000.

## FACTS

Plaintiff Lawrence J. Rochester is a resident of Wisconsin and, doing business as Royal of Wisconsin, has been an authorized dealer of vacuum cleaners manufactured by the defendant, Royal Appliance Manufacturing Company ("Royal").

Royal is a corporation with its principal place of business in Highland Heights, Ohio, and is engaged in the manufacture and sale of vacuum cleaners and related products.

The parties entered into an oral agreement sometime prior to 1970 whereby plaintiff was authorized to sell at wholesale the products of Royal within the State of Wisconsin.

The arrangement continued unchanged until August of 1976, when plaintiff relinquished his right to distribute the products of Royal in the eastern half of the State of Wisconsin. The right to distribute Royal products in this area was given to another person.

On December 3, 1979, a guaranty agreement was executed by plaintiff's wife, apparently acting for plaintiff, upon the demand of Royal. The agreement is signed by the wife for plaintiff as owner of Abbsco Sales & Service, not for plaintiff as the owner of Royal of Wisconsin. The agreement specifies that the signer of the agreement obligates himself to guarantee the indebtedness of the purchaser (Royal of Wisconsin—that is, plaintiff) to Royal (the defendant). The signer waives notice of the amounts of the purchaser's debt, changes in credit terms between the purchaser and Royal and other matters. The agreement further provides that Royal is not, by virtue of the agreement, obligated in any way regarding sales to the purchaser, whether by credit or otherwise.

On September 13, 1982, plaintiff received a letter from Royal which terminated him as a distributor. The termination appears to have been effective immediately.

## MEMORANDUM

In *Wipperfurth v. U-Haul*, 101 Wis.2d 586, 304 N.W.2d 767 (1981), the Supreme Court of Wisconsin held that application of the WFDL to agreements which predated the effective date of the law was an unconstitutional impairment of the obligation of contract. The original WFDL was effective on April 5, 1974. Since the relationship between these parties was begun prior to 1970, Royal contends that the WFDL is inapplicable.

A short history of the WFDL is in order. Effective on April 5, 1974, the intent of the law was to protect the inherently weaker dealer from the greater economic power of the grantor. *Boatland, Inc. v. Brunswick Corp.*, 557 F.2d 818 (6th Cir.1977). The law forbade the termination, cancellation, failure to renew or imposition of a substantial change in competitive circumstances without good cause against a dealership granted after the effective date of the act. The law provided for 90 days notice to the dealer, defined good cause as, generally, failure on the part of the dealer, and provided for injunctive relief in addition to damages.

By amendments effective on November 24, 1977, the law was modified in several respects. For purposes of this case, the important change was a repeal of the section governing applicability of the law to those agreements entered into after the effective date of the act. Wis.Stats. § 135.03 (1975). This section was replaced by Wis. Stats. § 135.025(2)(d) which states:

> (2) The underlying purposes and policies of this chapter are:
>
> \*   \*   \*   \*   \*   \*
>
> (d) To govern all dealerships, including any renewals or amendments, to the full extent consistent with the constitution of this state and the United States.

It is this section, to the extent that it provides for retroactive application of the law, which was held to be unconstitutional in *Wipperfurth*.

Because the agreement between the parties underwent two changes since 1974, plaintiff argues that the law is applicable. A renewal or amendment after the effective date of the Act, plaintiff asserts, will cause the dealership agreement to be governed by the WFDL. For this proposition plaintiff cites three cases. An analysis of these cases as it concerns the first of the changes, the 1976 territorial change, provides no support for plaintiff.

In *Reinders Bros. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44 (7th Cir.1980), the Court held that a dealer who signed a new contract with the grantor every year after 1974 which specifically cancelled and superseded prior contracts, was covered by the law even though the relationship commenced in 1959. The Court also held that, even though renewals did not trigger coverage under the law until the 1977 amendments, the grantor's continuation of the relationship for a year after the 1977 contract expired amounted to a renewal after the 1977 amendments to the law.

Under no reading of the common law or the WFDL can the two changes in the relationship between the parties here be considered post-1974 renewals so as to bring this case within the holding of *Reinders Bros.*

In *E.A. Dickinson v. Simpson Electric*, 509 F.Supp. 1241 (E.D.Wis.1981), the Court cited *Reinders Bros.* for the following proposition:

> If a contract is renewed *or amended* after the effective date of the Act, or a new contract is entered into, that contract is governed by the Act. (Emphasis supplied.)

*Id.* at 1247. The Court went on to hold that the addition of a product line after the effective date of the Act did not amount to an amendment.

This Court can find no justification in *Reinders Bros.* for the underlined portion of the above quoted language. Furthermore, the WFDL itself provides no such justification. The change in 1976 whereby plaintiff relinquished his right to distribute in eastern Wisconsin took place at a time when WFDL provided coverage only to dealers who had entered into their dealerships after April 5, 1974. Renewals after 1974 were insufficient, *see Reinders Bros.*, 627 F.2d at 49; it can hardly be argued that an amendment could bring the relationship within the WFDL at that time either. To the extent that the 1977 amendments to the WFDL might suggest that a pre-1977 amendment could trigger coverage, it must be unconstitutional on the same grounds as stated in *Wipperfurth*. It is clear from the analysis in that case that coverage under the law is a substantial impairment of ongoing contracts and cannot be imposed

against the contractual expectations of the grantor absent some showing of pressing social problems which was absent in 1974 and apparently remains absent now.

Finally, in *Kealey Pharmacy v. Walgreen Co.,* 539 F.Supp. 1357 (W.D.Wis.1982), two dealer plaintiffs were in situations similar to that of plaintiff here.

The Court held that dealer agreements entered into between the effective date of the Act (1974) and the 1977 amendments were covered by the law, and stated as follows:

As *Wipperfurth* makes clear, the mere continuance after April 5, 1974 of a dealership arrangement of indefinite duration does not constitute a dealership agreement "entered into after" that date. Similarly, an automatic renewal contemplated under the terms of a dealership agreement is not an agreement "entered into" so as to bring the dealership under the original terms of the Act.

The new Kealey and Langmack contracts were not simply automatic renewals of the prior contracts; they represented a significant alteration of the relationship between the parties. The new contract differed from the prior ones in several respects and, in particular, with respect to the minimum yearly purchase requirement for each dealership. Moreover, under the old contracts, defendant had no obligation to renew its agreement with either plaintiff.

Thus, when defendant negotiated the new contracts, it was making a fresh decision in each instance whether to appoint Kealey Pharmacy and Langmack's Drugs as Walgreen agencies. *Cf. Reinders Bros. v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 49–50 (7th Cir.1980) (where grantor and dealer operated under annual contracts providing no guarantee of a new contract for the succeeding year, it was apparent that the parties saw themselves as making a new dealership agreement each year, so as to bring their dealership under the terms of the Fair Dealership Law as of their first an-

nual agreement following enactment of the law).

In the circumstances of the present case, I find and conclude that the Kealey and Langmack contracts were dealership agreements "entered into" after April 5, 1974, and therefore subject to the terms of the Fair Dealership Law.

*Id.* at 1363. It is thus apparent that, as it concerns acts between the effective date of the WFDL (1974) and the 1977 amendments, the acts must satisfy the "entered into" language of the original WFDL before coverage under the WFDL can be imposed. The parties in this case did not enter into a new dealership agreement when plaintiff relinquished part of his territory. While this change may have been substantial to the plaintiff, it is not equivalent to the kind of changes contemplated by the *Kealey* decision. Rather than making a "fresh decision" whether to continue plaintiff as a distributor, the parties continued the pre-existing relationship, albeit on a smaller scale.

The Court must conclude that both *Reinders Bros.* and *Kealey,* rather than providing support for plaintiff, actually show that the 1976 relinquishment of territory was insufficient to allow plaintiff to invoke the remedies of the WFDL for the termination of his agreement. As a matter of law, the 1976 change in the relationship did not amount to the making of a new agreement. The Court regards the language concerning amendments in *E.A. Dickinson* which might support a contrary conclusion to be unsupported dicta.

Plaintiff also asserts that the imposition by Royal of the guaranty agreement in 1979 is an amendment which triggers the coverage under the WFDL. This change, unlike the change of 1976 relating to territory, must be considered in light of the 1977 amendments to the WFDL.

Arguably, the amendment to the WFDL embodied by § 135.025(2)(d), Wis.Stats., would make any amendment to a dealership agreement not otherwise covered by the WFDL enough to trigger coverage. But, rather than deciding that question, the

Court must conclude that the guaranty agreement is not an amendment to the dealership relationship between the parties.

Plaintiff cites *Van v. Mobil Oil,* 515 F.Supp. 487, 491 (E.D.Wis.1981) for the proposition that a change in credit terms, as the change here is claimed to be, is a significant alteration of the relationship between the parties. The Court would point out that the change in credit terms in *Van* was direct and would have resulted, for practical purposes, in putting the dealer out of business. Furthermore, the decision in *Van* was directed at whether or not a particular change was a "substantial change in competitive circumstances" for purposes of invoking the WFDL to enjoin such a change.

*Van* is not applicable to the question here, which is whether a change in the relationship is sufficient to trigger the application of the law to a relationship which would not otherwise be covered because it was entered into prior to the effective date of the law.

Assuming that an amendment to the agreement between the parties is enough to trigger coverage, the question is whether the guaranty agreement is an amendment to the dealership agreement. The Court must hold that it is not.

First, by its terms, the guaranty agreement was meant to provide security for the granting of credit to plaintiff by Royal by virtue of naming a third party to be responsible for plaintiff's debts. The guaranty is signed by the plaintiff's wife on behalf of plaintiff as the owner of Abbsco Sales & Service. Presumably, Abbsco is another unincorporated business entity owned by plaintiff. Thus, the agreement is a contract between Royal and a third party, not between Royal and plaintiff. Thus, the agreement cannot be an amendment to the dealership relationship between Royal and plaintiff. It is, on its face, something else—an agreement by a third party to be responsible for the debts of another.

Second, even if the Court were to assume, as plaintiff apparently wishes it to do, that the agreement is between the parties to the dealership, the guaranty agreement does not amount to an amendment of that relationship. The guaranty merely makes the plaintiff responsible for the debts he incurs when he orders inventory. It adds nothing to his obligations. There is no change of interest rate or time for payment. The only provision which might be construed as imposing an additional burden on the plaintiff is that he is responsible for costs of collection including attorney fees. The Court cannot regard this as an amendment to the dealership agreement.

## CONCLUSION

The dealership relationship between the plaintiff and Royal predates the effective date of the Wisconsin Fair Dealership Law. The two changes which have taken place in the ongoing relationship are insufficient to bring the relationship within the law. The relinquishment of territory by plaintiff in 1976 was insufficient to make the agreement one "entered into" after the effective date of the law. The signing of the guaranty agreement in 1979 was not an amendment to the dealership.

Accordingly, summary judgment must be granted to the defendant. Defendant has filed a counterclaim, which will be the subject of the final pre-trial conference and trial scheduled September 2, 1983 and September 19, 1983, respectively.[1]

---

1. Two facts, which appear to be undisputed in the record but which were not formally set forth in the proposed findings of fact by the parties, were not considered by the Court in arriving at the conclusion herein. These facts are that plaintiff's territory was modified periodically during the entire relationship, and that plaintiff voluntarily relinquished the territory in 1976 to a person who had been working for him. Given the Court's holding concerning the territorial change, these facts make no difference. The periodic territorial changes would make this case similar to the irregular addition of product lines discussed in *E.A. Dickinson,* which were held not to be amendments. The voluntariness of the territory change in 1976 further undercuts the contention of plaintiff that the change was an amendment to the dealership.

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment on liability is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment dismissing plaintiff's complaint is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to extend the period for discovery is moot.