647 F.Supp. 867 (1986)
C & J DELIVERY, INC., Plaintiff,
v.
EMERY AIR FREIGHT CORP., Defendant.
No. 86-358C(1).
United States District Court, E.D. Missouri, E.D.
November 12, 1986.
*868 L. William Higley, Shifrin & Treiman, Clayton, Mo., for plaintiff.
Catherine D. Perry, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This matter is now before the Court on defendant's motion for partial summary judgment. Defendant contends that, as a matter of law, the contractual relationship between Emery and C & J (1) was not a "franchise" as defined by Mo.Rev.Stat. § 407.400(1), and (2) was not a fiduciary relationship. The Court finds that defendant has not shown that the Emery and C & J relationship was not a "franchise". However, the Court finds that defendant has shown that, as a matter of law, the Emery and C & J relationship was not a fiduciary relationship. Therefore, defendant's motion for partial summary judgment is granted in part and denied in part. Celotex Corp. v. Catrett, ___ U.S. ___, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
Plaintiff C & J Delivery, Inc. filed a seven-count complaint against defendant Emery Air Freight Corp. alleging breach of contract, fraud, violation of the Missouri franchise statute, breach of fiduciary duty, and breach of an implied covenant of good faith and fair dealing. The complaint arises out of two package delivery contracts between Emery and C & J. Under the contracts, C & J delivered and picked-up packages for Emery in the St. Louis and Miami Metropolitan areas. In 1985, Emery terminated both contracts.
Count III of the complaint alleges that the St. Louis contract created a "franchise" as defined by Mo.Rev.Stat. § 407.400(1), and that Emery violated Mo.Rev.Stat. § 407.405 by terminating the "franchise" without giving the statutorily mandated 90 days' notice. Count VII claims that the St. Louis and Miami contracts created a fiduciary relationship between Emery and C & J, and that Emery breached its fiduciary duty to C & J by terminating the two contracts. Emery filed a motion for partial summary judgment, contending that, as a matter of law, (1) the St. Louis contract did not create a "franchise", and (2) the St. Louis and Miami contracts did not create a fiduciary relationship.

Facts
Emery is a nationwide package forwarding company. Emery transports the packages between cities. Emery runs a package facility at and/or near the airport in each city. In each city, Emery contracts with an independent local delivery company to pick-up and deliver the packages between customer locations in the city and Emery's airport facility.
In 1974, Emery and C & J executed the St. Louis contract at issue here. The contract principally provided that C & J would transport packages from Emery's package facility located near Lambert-St. Louis International Airport to the package recipient's location in St. Louis. Likewise, C & J would pick-up packages from consignors in St. Louis and transport the packages to Emery's package facility. C & J also transferred packages between airlines at Lambert-St. Louis Airport and performed terminal handling services. (Jenkins Affidavit, ¶ 3).
C & J purchased uniforms bearing the Emery logo from a manufacturer designated by Emery. C & J delivery personnel wore these uniforms bearing the Emery logo while delivering the Emery packages. These uniforms were the same for all delivery personnel delivering Emery packages nationwide. Business cards identified the C & J delivery personnel as representatives of Emery. C & J owned the delivery trucks used to deliver the Emery packages. Emery required that the delivery trucks be painted with the Emery logo according to Emery's specifications. The uniforms, the *869 business cards, and the trucks bore only the Emery logo. They did not refer to C & J. (Jenkins Affidavit, ¶ 4).
Essentially, pursuant to the contractual relationship between Emery and C & J, C & J delivery personnel, wearing uniforms bearing the Emery logo and driving trucks bearing the Emery logo, picked-up and delivered packages between St. Louis locations and Lambert-St. Louis Airport.
Emery billed package delivery customers directly and usually received payment directly from the customers. If a customer paid the C & J delivery personnel, C & J remitted that money to Emery. Emery paid C & J a fixed fee based on the size and/or weight of the package, the delivery location for the package, and the type of service performed by C & J with respect to the package.
Between 1974 and 1985, C & J and Emery negotiated annually over the terms of the contract. Each year the parties, among other things, adjusted the fee which Emery paid C & J per package to reflect C & J's increased costs. The 1974 St. Louis contract was three and one-half pages long. The May 1983 amendments were contained on six pages. The May 1983 Ninth Amended Schedule A, Part # 3, set forth C & J's specific duties under the contract on two pages.
On April 19, 1985, defendant, by written notice, terminated and cancelled the St. Louis contract without giving plaintiff 90 days' notice thereof.
The Missouri franchise statute, titled "Pyramid Sales Schemes," provides in pertinent part:
407.400. Definitions
As used in sections 407.400 to 407.420:
(1) "Franchise" means a written or oral arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise ...; except that, the term "franchise" shall not apply to [sales from warehouses, etc.], nor shall the term "franchise" apply to a commercial relationship that does not contemplate the establishment or maintenance of a place of business within the state of Missouri. As used herein "place of business" means a fixed, geographical location at which goods, products or services are displayed or demonstrated for sale; ...
Mo.Rev.Stat. § 407.400(1).
407.405. [Pyramid Sales]  cancellation of franchise without notice prohibited, exceptions
... No person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination or failure to renew in writing at least ninety days in advance of the cancellation, termination or failure to renew, except that when criminal misconduct, fraud, abandonment, bankruptcy or insolvency of the franchisee, or the giving of a no account or insufficient funds check is the basis or grounds for cancellation or termination, the ninety days' notice shall not be required.
Mo.Rev.Stat. § 407.405.
Defendant contends (1) that the franchise statute is not applicable to the 1974 St. Louis contract because the contract was entered into before the effective date of the statute; (2) that the St. Louis contract did not create a franchise under Mo.Rev. Stat. § 407.400; and (3) that the St. Louis and Miami contracts did not create a fiduciary relationship between Emery and C & J.

Summary Judgment
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir.1986). *870 The burden of proof is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, ___ U.S. ___, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the opposing party and must give that party the benefit of all reasonable inferences to be drawn from the facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., ___ U.S. ___, 106 S.Ct. 1348, 1356-1357, 89 L.Ed.2d 538 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir.1986); Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty and Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). Summary judgment is an extreme remedy. A court should not grant a summary judgment motion unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and unless the court is convinced that the other party is not entitled to recover under any discernible circumstances. Foster v. Johns-Manville Sales Corp., et al., 787 F.2d 390, 392 (8th Cir.1986); Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure, § 2739 (1983).
Of the few cases involving the Missouri franchise statute, Mo.Rev.Stat. § 407.400(1) et seq., only American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135 (8th Cir.1986), interpreted the meaning of the § 407.400(1) definition of "franchise." The Court has not found any Missouri or federal case which addressed the applicability of the Missouri franchise statute to contracts entered into before, but amended after, the effective date of the statute. See e.g., Bain v. Champlin Petroleum Co., 692 F.2d 43 (8th Cir.1982); Brown-Forman Distillers Corporation v. McHenry, 566 S.W.2d 194 (Mo. Banc 1978); State ex rel. Ashcroft v. Wahl, 600 S.W.2d 175 (Mo.App.1980).
The subject matter jurisdiction of the Court in this case is diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).
In a diversity case, the federal court `is not to formulate the legal mind of the state, but merely to ascertain and apply.' Stratioti v. Bick, 704 F.2d 1052, 1054 (8th Cir.1983) (citations omitted). Where neither the legislature nor the highest court in a state has addressed an issue, the federal court must determine what the highest state court would hold were it called upon to decide the issue.
Hazen v. Pasley, 768 F.2d 226, 228 (8th Cir.1985).

1. Applicability of the Missouri franchise statute to the 1974 contract.
The St. Louis contract was executed on June 1, 1974. The Missouri franchise statute did not become effective until November, 1974. Thus, defendant contends that the statute does not apply to this contract. Plaintiff concedes that a contract which was entered into before the effective date of a franchise statute, and which was not amended after the effective date thereof, is not controlled by that statute. See Arnott v. American Oil Co., 609 F.2d 873, 883 (8th Cir.1979), cert. denied, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980) (South Dakota franchise statute did not apply to an unamended contract entered into before the effective date of the statute); Wipperfurth v. U-Haul, 101 Wis.2d 586, 304 N.W.2d 767 (1981) (Wisconsin franchise statute did not apply to agreement which predated the effective date of the statute). However, plaintiff argues that the yearly amendments to the 1974 contract and the substantial amendments in 1983 are sufficient changes after the effective date of the statute to bring the contract within the scope of the statute.
In Reinders Brothers v. Rain Bird Eastern Sales Corp., 627 F.2d 44 (7th Cir.1980), the dealership contract was entered into *871 before the effective date of the Wisconsin franchise statute. However, the parties renewed the contract annually. The court held that the contract renewed after the effective date of the statute was covered by the statute. 627 F.2d at 49-50. In Rochester v. Royal Appliance Manufacturing Co., 569 F.Supp. 736 (W.D.Wis. 1983), the contract was entered into before the effective date of the Wisconsin franchise statute. The court held that minor amendments to the contract after the effective date of the statute did not render the contract subject to the statute. 569 F.Supp. at 738. The Court noted that substantial changes to the contract could create a new contract entered into after the effective date of the statute. In such a case, the amended contract would be subject to the statute. 569 F.Supp. at 739-740.
In State ex rel. Ashcroft v. Wahl, 600 S.W.2d 175 (Mo.App.1980), the Missouri Court of Appeals held that those portions of Mo.Rev.Stat. § 407.400 and § 407.405 which are remedial in nature are to be given a liberal construction. 600 S.W.2d at 180-181. The provision of Mo.Rev.Stat. § 407.405 which requires the franchisor to give the franchisee 90 days' notice in advance of termination is such a remedial provision. The Court finds that Missouri courts would give Mo.Rev.Stat. § 407.405 a broad application. Mo.Rev.Stat. § 407.405 probably would not be applied to unamended contracts entered into before the effective date of the statute. See Arnott v. American Oil Co., 609 F.2d 873 (8th Cir. 1979), cert. denied, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980). However, Mo. Rev.Stat. § 407.405 would be applied to contracts renewed or substantially amended after the effective date of the Missouri franchise statute. See Reinders Brothers v. Rain Bird Eastern Sales Corp., 627 F.2d 44 (7th Cir.1980).
The contract between Emery and C & J was amended yearly with a new price term. The Court finds that in effect the parties renewed the contract annually. Further, given the length and complexity of the 1983 amendments in comparison to the 1974 agreement (six pages of amendments to a three and one-half page contract), the Court finds that the parties substantially amended the 1974 contract after the effective date of the statute. At this point, the Court does not decide whether the Emery and C & J contract in fact created a "franchise". However, if the contract created a "franchise," the Missouri franchise statute is applicable to the contract because it was renewed and/or substantially amended after the effective date of the statute.

2. Existence of a franchise covered by the statute.
Defendant contends that the Emery and C & J contractual relationship did not create a "franchise" as defined by the Missouri franchise statute because (1) there was no "community of interest" between Emery and C & J, and (2) C & J did not have a "place of business" within Missouri as defined by the statute.
In American Business Interiors v. Haworth, Inc., 798 F.2d 1135 (8th Cir.1986), the Eighth Circuit stated that the Missouri franchise statute:
establishes two definitional criteria for a franchise, both of which must be met: (1) the grant of a license in the franchisor's trade name, and (2) a community of interest in a business enterprise.
798 F.2d at 1139-1140.
The statute, § 407.400, also contains an exception which provides that the term "franchise" does not "apply to a commercial relationship that does not contemplate the establishment or maintenance of a place of business within the State of Missouri."

A. Community of Interest
Defendant concedes that it has granted plaintiff a license in its trade name. See American Business Interiors v. Haworth, Inc., 798 F.2d 1135 (8th Cir.1986). Defendant relies on Kania v. Airborne Freight Corp., 99 Wis.2d 746, 300 N.W.2d 63 (1981), to argue that there is no community of interest between Emery and C & J in the *872 package delivery business. Kania, like C & J, locally delivered and picked-up packages for a national package delivery company. Kania, like C & J, billed Airborne a fee per package delivered. Airborne, like Emery, billed customers directly and received payment from customers directly. However, Kania, unlike C & J, displayed both his own complete business identification and Airborne's logo on his delivery trucks. 300 N.W.2d at 67-68.
The Wisconsin Supreme Court interpreted the Wisconsin statutory definition of a community of interest to mean "a continuing financial interest between the [franchisor] and the [franchisee] in either the operation of the dealership business or the marketing of such goods or services." The court found that Kania did not have a continuing financial interest in the marketing of Airborne's services and that his only interest was "summed up in his own words `what was good for Airborne was good for Kania'." The court concluded that if Kania were an Airborne franchisee, then that "would lead to the absurd and unreasonable result of including every vendor/vendee relationship under the protective veil" of the franchise statute. 300 N.W.2d at 73. Thus, the court held that in these circumstances, as a matter of law, no community of interest existed between Kania and Airborne. 300 N.W.2d at 71-73.
The Missouri franchise statute requires a "community of interest in the marketing of goods or services." Unlike the Wisconsin franchise statute at issue in Kania v. Airborne, Missouri's franchise statute does not contain a definition for "community of interest." The Court believes that Missouri courts would interpret "community of interest" to mean, at a minimum, either (1) the franchisor benefits from the franchisee's marketing of the franchisor's product or service, or (2) the franchisee benefits from the franchisor's marketing of the product or service.
Emery did not deliver the packages directly to its customers. Instead, Emery utilized independent delivery companies in each city which Emery serviced. Emery prospered only if Emery generated volume business. Emery generated business only if its local delivery companies provided good service. Thus, Emery's package forwarding business depended upon the service provided by local delivery companies like C & J. The quality and efficiency of Emery's service to its customers nationwide depended upon the quality and efficiency of the service provided by each local delivery company.
C & J did not solicit business from customers directly. Instead, C & J picked-up and delivered packages which customers consigned to Emery. C & J picked-up and delivered packages only if customers chose to contract with Emery. The volume of C & J's business depended upon the volume of Emery's business nationwide. C & J prospered only if Emery generated business. Thus, C & J's business was inextricably linked to Emery's ability to market its service to customers nationwide and to Emery's ability to maintain an efficient delivery system in the other cities which Emery serviced.
In sum, C & J's business depended upon Emery and the delivery companies in other cities. Emery's business depended upon all of its delivery companies, including C & J. Missouri courts would interpret the § 407.400(1) definition of "franchise" broadly and would interpret "community of interest" broadly. State ex rel. Ashcroft v. Wahl, 600 S.W.2d 175, 180-181 (Mo.App. 1980). The Court finds that a Missouri court would find "community of interest" between Emery and C & J in the marketing of Emery's package delivery service.
Emery granted C & J a license in its trade name. There was "community of interest" between Emery and C & J. Therefore, the Emery and C & J contract meets the basic definitional criteria for a "franchise" contained in Mo.Rev.Stat. § 407.400(1). American Business Interiors v. Haworth, Inc., 798 F.2d 1135 (8th Cir.1986).
The Court is unable to distinguish Kania v. Airborne on its facts. The Court does not believe that the mere fact that Kania *873 had both his own and Airborne's logo on his trucks distinguishes that case from the facts of this case. The Court notes that the Wisconsin Supreme Court was interpreting and applying a statutory definition of "community of interest." Missouri does not have such a definition. In any case, Kania v. Airborne is Wisconsin law. The Court must ascertain and apply Missouri law. Hazen v. Pasley, 768 F.2d 226 (8th Cir.1985). Under Missouri law, Mo.Rev. Stat. § 407.400(1), there was sufficient "community of interest" between Emery and C & J to create a "franchise."

B. Place of Business in Missouri
Emery had a package facility near Lambert-St. Louis Airport. Members of the public could drop off packages at this facility for package delivery by the Emery system. Emery personnel ran this facility insofar as this facility was used to conduct business with the general public. C & J performed some services for Emery at this facility. C & J picked-up packages from and delivered packages to this facility.
Emery contends that, for the Missouri franchise statute to apply, § 407.400(1) requires that the franchisee maintain a place of business in Missouri at which the good or service is displayed or demonstrated for sale to customers. Emery contends that C & J did not maintain such a place of business in Missouri.
The Court agrees that C & J did not maintain such a place of business in Missouri. However, the Court does not agree that § 407.400(1) requires the franchisee to maintain such a place of business. Rather, the Court finds that the statute requires either the franchisor or the franchisee to maintain such a place of business. The Court finds that Emery did maintain a place of business in Missouri at which the service was displayed or demonstrated for sale to customers. Therefore, the "place of business" requirement of § 407.400(1) was satisfied.
The pertinent language of § 407.400(1) reads "nor shall the term `franchise' apply to a commercial relationship that does not contemplate the establishment or maintenance of a place of business within the State of Missouri." The words of the franchise statute should be given their "plain and rational meaning." State ex rel. Ashcroft v. Wahl, 600 S.W.2d 175, 181 (Mo. App.1980). Provisions not plainly written into the law and not necessarily implied from the law may not be added to the law "by a court under the guise of" statutory construction. State ex rel. Igoe v. Bradford, 611 S.W.2d 343, 349 (Mo.App.1980). "Judicial construction gives effect to legislative intent from what the legislature said and not from what the legislature may have intended to say or inadvertently failed to say.... [T]he court functions to enforce the law as it is written." Id.
On its face, the statute does not require that the franchisee contemplate or establish a place of business in Missouri.[1] The Court will not add such a requirement unless it is necessarily implied from the context. State ex rel. Igoe v. Bradford, 611 S.W.2d 343, 349 (Mo.App.1980). The statute requires that the "commercial relationship" contemplate the establishment of a place of business in Missouri.
In contrast to the language of the Missouri franchise statute, the New Jersey franchise statute, N.J.S.A. § 56:10-4, states: "This act applies only to a franchise (1) the performance of which contemplates or requires the franchisee to establish or *874 maintain a place of business within the State of New Jersey...." (emphasis added). As American Business Interiors v. Haworth, Inc., 798 F.2d 1135 (8th Cir.1986) noted, the Missouri statute is similar to the New Jersey statute, except that the New Jersey statute is narrower. 768 F.2d at 1140 n. 3. The Court will not attribute the Missouri statute's differences from the New Jersey statute to accident or mistake on the part of the Missouri legislature. State ex rel. Igoe v. Bradford, 611 S.W.2d 343, 349 (Mo.App.1980). The Court will determine the legislative intent and the statutory meaning from what the legislature said, not from what the Court thinks the legislature intended to say. Id.
The apparent intent of the provision is to require that the franchise relationship  the commercial relationship  have a nexus to Missouri. The required nexus is a place of business in Missouri. The Court does not discern any legislative intent to require that the franchisee be the party to establish that nexus. What is meant by having a "commercial relationship" contemplate the establishment of a business is more obscure.
A franchise contract will require the franchisor to perform some acts in furtherance of the franchise business. Likewise, the contract will require the franchisee to perform some other acts in furtherance of that business. The contract will delineate the form or method for operating and conducting the franchise business covered by the contract. The Court construes the Mo. Rev.Stat. 407.400(1) "place of business requirement" to mean that the chosen form or method of operation must contemplate or require the establishment of a place of business in Missouri for the conduct of the franchise business. The "place of business requirement" is satisfied so long as the contract requires or contemplates that somebody, either the franchisor or the franchisee, will establish a place of business in Missouri for the conduct of the franchise business.
As noted above, Emery maintained a place of business in Missouri at which its package forwarding service was displayed or demonstrated for sale to customers. At this place of business, Emery and C & J conducted the franchise business covered by their contract. Thus, the Mo.Rev.Stat. § 407.400(1) "place of business requirement" was satisfied.

C. Conclusion
The Court finds that the Emery and C & J contractual relationship created a "franchise" as defined by Mo.Rev.Stat. § 407.400(1) in that (1) Emery granted C & J a license in Emery's trade name, and (2) there existed a "community of interest" between Emery and C & J in the business enterprise contemplated by the St. Louis contract. American Business Interiors v. Haworth, Inc., 798 F.2d 1135 (8th Cir. 1986). Further, the Court finds that the Mo.Rev.Stat. § 407.400(1) "place of business requirement" was satisfied in that Emery maintained the necessary place of business in Missouri. Therefore, Emery's motion for partial summary judgment on plaintiff's claim for breach of the franchise statute, Count III, is denied.

3. Existence of a fiduciary relationship.
Under Missouri law, the basic elements necessary to establish a fiduciary relationship are:
(1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party. *875 Chmieleski v. City Products Corp., 660 S.W.2d 275, 294 (Mo.App.1983).
The rule in Missouri is that the existence of a business relationship, without more, does not give rise to a fiduciary relationship. Chmieleski v. City Products Corp., 660 S.W.2d 275, 294 (Mo.App.1983). A franchise agreement under the Missouri franchise statute, Mo.Rev.Stat. § 407.400 et seq., does not create a fiduciary relationship. Bain v. Champlin Petroleum Co., 692 F.2d 43, 47-48 (8th Cir.1982). See Chmieleski v. City Products Corp., 660 S.W.2d 275, 295 (Mo.App.1983).
The deposition testimony of Clyde Jenkins, president and sole stockholder of plaintiff C & J Delivery, establishes, as a matter of law, that no fiduciary relationship existed between Emery and C & J. In his deposition, Mr. Jenkins testified, among other things, that Emery and C & J negotiated at arm's length over rates and over contract terms (such as C & J's desire to have Emery repurchase C & J's equipment if Emery terminated the contract). (Jenkins deposition, pp. 67, 81, 82, 100, 105-107, 109, & 114). C & J employees wore Emery uniforms and C & J trucks bore the Emery logo. C & J employees may have been the "representatives" of Emery to the public. However, C & J was an independent company. C & J disciplined its own employees, made its own equipment purchases, entered into its own contracts, and negotiated at arm's length with Emery.
There is a complete lack of showing by plaintiff (1) of any subservience by plaintiff to defendant; (2) of any management by defendant of plaintiff's business; (3) of any surrender of plaintiff's independence; (4) of any manipulation of plaintiff by defendant; and (5) of the plaintiff placing any trust and confidence in defendant. The Court finds that defendant has demonstrated that, as a matter of law, no fiduciary relationship existed between plaintiff and defendant. Chmieleski v. City Products Corp., 660 S.W.2d 275, 294-295 (Mo. App.1983). Therefore, defendant's motion for partial summary judgment as to plaintiff's claim for breach of fiduciary duty, Count VII, is granted. Celotex Corp. v. Catrett, ___ U.S. ___, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that defendant's motion for partial summary judgment be and is granted in part and denied in part.
IT IS FURTHER ORDERED that defendant's motion for partial summary judgment on plaintiff's claim for breach of the Missouri franchise statute, Count III, be and is denied.
IT IS FURTHER ORDERED that defendant's motion for partial summary judgment on plaintiff's claim for breach of fiduciary duty, Count VII, be and is granted.
NOTES
[1] The Court notes that the companion statute to the Missouri Franchise Act, § 407.400 et seq., the Missouri Vehicle Franchise Practices Act § 407.810 et seq., defines franchise without requiring the franchisee to maintain a place of business in Missouri. § 407.815(2). Section 407.820 states that the franchisor is subject to the jurisdiction of the courts of Missouri if the franchisee maintains a place of business in Missouri. This provision, as written, appears to be a supplement to the Missouri long-arm statute, Mo.Rev.Stat. § 506.500, subdivision 1, paragraph 1. As written, it does not limit the application of the Missouri Motor Vehicle Franchise Act to those cases where the franchisee maintains a place of business in Missouri. Section 407.820 evidences that the Missouri legislature knows how to draft a statutory requirement that the franchisee contemplate or establish a place of business in Missouri.